```
 1                 UNITED STATES DISTRICT COURT
                   MIDDLE DISTRICT OF FLORIDA
 2                      ORLANDO DIVISION

 3                  Docket No. 6:12-CV-1304

 4   . . . . . . . . . . . . . .
     JEANNETTE MARTELLO,         :
 5   INDIVIDUALLY, JYM, LLC      :
                                 :        Orlando, Florida
 6          Plaintiffs           :        January 10, 2014
                                 :        1:29 p.m.
 7              v.               :
                                 :
 8   PRODUCT QUEST MANUFACTURING,:
     LLC, ET AL.                 :
 9                               :
            Defendants           :
10   . . . . . . . . . . . . . .

11

12                  TRANSCRIPT OF HEARING
              BEFORE THE HONORABLE PAUL A. ZOSS
13             UNITED STATES MAGISTRATE JUDGE

14

15   APPEARANCES:

16

17   For the Plaintiffs:  Justin Sobodash (By Telephone)

18

19   For the Defendants:  Robert M. Norway
                          Jason Zimmerman
20

21

22   Court Reporter:      Amie R. First, RPR, CRR
                          AmieFirst.CourtReporter@gmail.com
23

24   Proceedings recorded by FTR Gold Digital Recording.

25   Transcript produced by Computer-Aided Transcription.
```

```
 1                      P R O C E E D I N G S
 2             THE DEPUTY CLERK:  Case Number
 3    6:12-CV-1304-ORL-22GJK, Jeannette Martello, individually,
 4    and JYM, LLC versus Product Quest Manufacturing, LLC, et
 5    al.
 6             Counsel, please state your appearances for the
 7    record?
 8             MR. SOBODASH:  Good afternoon.  Justin Sobodash
 9    for the plaintiffs.
10             THE COURT:  Good afternoon, Mr. Sobodash.
11             MR. NORWAY:  Good afternoon, Your Honor.  Rob
12    Norway for the defendants.  And here with me at counsel
13    table is Jason Zimmerman.  Mr. Zimmerman is a member of the
14    Florida Bar, but in full disclosure his application for the
15    Middle District is pending.
16             THE COURT:  He's welcome to be here today.
17             If you'd do me a favor, Mr. Norway.  I've listened
18    to the tape of our last hearing, and your voice is very
19    hard to hear.
20             If you'd -- make sure you remain seated and get
21    close to the microphone.  I think we'll have a better
22    chance of getting a good record of what you have to say.
23             I was able to make out everything you said, but it
24    was real hard to hear.
25             MR. NORWAY:  Okay.  Thank you, Your Honor.
```

1          THE COURT:  When we last met, I ordered the

2     parties to attempt to work out the outstanding discovery

3     disputes for the matter.  I held in abeyance a ruling on

4     dockets number 50 and 44 -- excuse me, 50 and 54.

5          Since then, upon order of the Court, that both

6     parties have filed status reports and also the defendant

7     has filed opposed motion to enlarge the time for their

8     expert disclosure.

9          I'll ask you, Mr. Norway, first of all, would you

10    update me on the status of the discovery disputes, what

11    remains to be done, and what you consider to still be a

12    problem?

13         MR. NORWAY:  Well, Your Honor, plaintiffs'

14    production is still not complete.  We know that there are

15    quite a few key documents which plaintiffs are relying on

16    to prove the elements of their claims that have not been

17    produced by plaintiffs.

18         Plaintiffs have taken the position that they do

19    not need to respond to the decus tecum requests that were

20    attached to the deposition notice of Dr. Martello.

21         And earlier this week, counsel for plaintiffs made

22    the representation that they made no effort to produce

23    those documents in response to those.  We have received no

24    objections to the duces tecum requests.  Plaintiffs have

25    not filed a response in opposition to our motion.

1          So those are outstanding issues with regard to the

2   completeness of the production as it was ordered by the

3   Court.

4          There are issues concerning the format of

5   production.  We understood that the plaintiffs would be

6   providing a format called a PST file format.  We thought we

7   had agreed that prior to Christmas that's how the

8   production would be done.

9          And when the production was complete -- and it was

10  completed by Dr. Martello through a file transfer system

11  and on a CD -- those files were not actually produced.  So

12  the format of the production has caused some problems.

13         There are also outstanding issues regarding the

14  adequacy of the privilege log that was provided by

15  plaintiffs.  We think it's incomplete.  It's inadequate as

16  it stands.

17         And we also believe that there are several items

18  on the privilege log that -- where the issue claim of

19  privilege has been waived because the communications are at

20  issue in this case.

21         THE COURT:  You indicated that there are documents

22  that you haven't received that the plaintiff intends to use

23  as a part of their case?

24         MR. NORWAY:  Correct, Your Honor.

25         For instance, on November 12, they disclosed the

1   supplemental report of Mr. Adams.  And in that report,

2   Mr. Adams lists and references an Email from Mr. Regan

3   dated December 28.

4           That Email has never been produced by plaintiffs,

5   even though we've been asking for it since it was listed in

6   that report.

7           THE COURT:  Any other documents you know about

8   that they intend to use to support their claim that you

9   haven't received?

10          MR. NORWAY:  Yes, Your Honor.

11          In claim one or count one of their -- of

12  plaintiffs' verified complaint, it is based on -- it's a

13  breach of contract claim for failure to provide documents

14  in response to a demand letter.  We have not -- we do not

15  have a copy of the final version of that demand letter, the

16  version that was sent.

17          We know that the demand letter was sent by Tina

18  Walls, the attorney in Nevada.  We know that Miss Walls has

19  testified on the 3rd that she provided a copy of her

20  files to Dr. Martello over the last few years.

21          And so far as we could tell, upon review, that

22  letter has never been provided to us by plaintiffs.

23          MR. SOBODASH:  Your Honor, I can address each of

24  those in turn.

25          THE COURT:  We'll let him finish, and then I'm

1    going to let you talk as well, Mr. Sobodash.

2           Mr. Norway, anything else?

3           MR. NORWAY:  We also know, Your Honor, that there

4    is an accountant, a Mr. Bradley Watts, who -- in Nevada.

5    And she provided -- or he provided services to

6    Dr. Martello, and he provided advice to Dr. Martello that

7    Dr. Martello used.  And she testified to this in her

8    deposition.

9           She relied on his advice.  And she used that

10   advice as a basis for allegations that are part of the

11   verified complaint in this case.

12          None of the communications between Mr. Watts and

13   Mr. Martello have been provided to us.  None of them have

14   been logged on the privilege log.

15          And she testified on November 26 that she had

16   communications with him and that they were brought into her

17   first attorney.

18          THE COURT:  Okay.

19          MR. NORWAY:  There are --

20          THE COURT:  Go ahead.

21          MR. NORWAY:  There are more.

22          THE COURT:  Tell me when you're done.  Go ahead.

23          MR. NORWAY:  Of course, you know, you run into the

24   problem, you don't know what you don't know.  But we do

25   know from the deposition testimony of Dr. Martello that she

-- and that there are Emails and other communications and faxes that follow-up on this demand letter issue that were sent by Miss Walls to our client.

And those letters haven't been produced. Those faxes haven't been produced. And the --

THE COURT: Do you have copies of those from your client?

MR. NORWAY: No, we do not, Your Honor.

THE COURT: The demand letter either?

MR. NORWAY: No, we do not, Your Honor.

THE COURT: Okay.

MR. NORWAY: And, also, there are being withheld communications from Miss Walls that involve the negotiation of the operating agreement. And those communications would be because they are relying on a communication from Mr. Regan to Tina Walls for the basis of their fraud claim.

And it is a single Email and larger Email discussion for exchange that involved Miss Walls and Dr. Martello. Those Emails have not been released to us.

THE COURT: Is that it?

MR. NORWAY: That's the list I have, yes, Your Honor.

THE COURT: Why is it that you don't have a copy of the letter that was sent to you and the other materials that were sent to you? Do you know?

1          MR. NORWAY:  Well, Your Honor, it was sent in

2     2007, early 2007.  And our clients have grown significantly

3     over the years.  And I know they've moved from several

4     locations, so their files are scattered throughout several

5     warehouses.  And they have opened facilities in other

6     places and closed them.  So I know that there's been a lot

7     of moving of records.

8          THE COURT:  So they've been lost basically?

9          MR. NORWAY:  I believe so, yes.

10          THE COURT:  Okay.  Mr. Sobodash, why don't you

11     tell me your position on this.

12          MR. SOBODASH:  Well, okay.  I want to make sure I

13     address each of the points, but the key documents that

14     we're relying on -- everything should be produced in this

15     -- it's all sort of related to this ESI production.

16          We have electronically stored information which I

17     have tried -- I've met with an IT person who is going to

18     put it in PST format and produce it.  So the delay in

19     production for some of responding to these is related to

20     that.

21          The documents in response to the subpoena

22     requests, Your Honor, you indicated at the last hearing

23     that under Federal Rule of Civil Procedure 30(b)(2) that

24     since the deposition notice was served I think about

25     13 or 12 days before the deposition, it didn't comply with

that 30(b)(2) which requires 30 days' notice in order to get documents from a party under Rule 30.

So I don't -- it's our position that we -- we're not -- we're not flouting any order nor is it -- no response to a motion was due because the second motion to compel was held in abeyance.

And objections were not due because it wasn't served within 30 days or it was served in less than 30 days.  So no objection was --

THE COURT:  First of all, there's nothing in the Court's order that I said -- that said you didn't have to respond to the motions to compel.  In fact, I specifically -- I think the order specifically said you should go ahead and respond to the motion to compel, and you haven't done so.

MR. SOBODASH:  Well, Your Honor, we have -- there are still plaintiffs' motions.  And even in the Email of November or December -- January 7 that Mr. Norway sent to me, he said -- he just said a general statement that we haven't -- you know, we haven't provided anything in response to the second motion to compel.

I don't -- it's plaintiffs' motion.  How am I -- if he's going to bring something up two days before --

THE COURT:  It's whose motion?  I'm sorry.

MR. SOBODASH:  It's defendants' motion.  If

they're going to bring it up -- if they're going to bring

up a general statement of -- in between December 18 when

your court issued -- when you issued your last order, Your

Honor, and this January 7, that's when -- that's the amount

of time that's passed, and there hasn't really been any

specific discussion from plaintiffs just regarding --

THE COURT:  All I'm asking you is, the plaintiff

filed these motions.  Motion for docket number 50 was filed

on --

MR. SOBODASH:  I --

THE COURT:  Excuse me.  Just a second.  Docket

number 50 was filed on December 9.  Docket 54 was filed on

December 17.

In the order, I said that my ruling was abated

pending plaintiffs' production of documents as set forth,

plaintiffs' responses to the motion, and the parties

continuing good faith conferences to resolve the issues.

And I'm just asking, have you responded to the

motions?  And if not, why?

MR. SOBODASH:  I've responded to the motions to

the extent defendants have met and conferred about them.

THE COURT:  That's not what a response to a motion

is.  I think you know that responding to a motion means to

file a response.

MR. SOBODASH:  But I -- well, what I said -- well,

what I thought abatement was was to file -- was that we were to discuss it instead of filing a response.

THE COURT: I said the Court's ruling on the motion is abated but that you were to go ahead -- I specifically said you were to go ahead and respond to it. But you haven't; is that right?

I guess what I want to know is, do you have documents that are responsive to the subpoena duces tecum that you haven't provided because you think there was a procedural omission in the way it was -- the documents were requested of you?

MR. SOBODASH: There probably are some documents that haven't been provided. There are different categories than there were in the initial set of request for production.

THE COURT: Okay. Well, go ahead. Finish your presentation.

MR. SOBODASH: Now, the letter sent by Tina Walls, it's my understanding that we don't have a copy of it either. And I don't know if we have any -- I don't think we should be blamed for it if defendants can't be blamed for it.

If my client knew when she signed her verified complaint that a letter was sent on about that date, that doesn't mean that -- that doesn't mean that the document

1    exists now.

2            Now, I'm --

3            THE COURT:  Are you representing that the document

4    doesn't exist or that you don't have a copy of it?

5            MR. SOBODASH:  I don't -- I've not seen -- I have

6    not seen a copy of that letter but --

7            THE COURT:  Have you made inquiry about the

8    letter?

9            MR. SOBODASH:  Yes.  I've looked.  I've looked for

10   it.

11           THE COURT:  Have you asked your client whether she

12   has it?

13           MR. SOBODASH:  Yes, I have.  But, I mean, that

14   doesn't -- that's not the extent of my search.  So yes.

15           Also, the conversations with Brad Watts, the

16   accountant, most of those are privileged because they're

17   attorney work product.  They were in communication with

18   Dr. Martello and Tina Walls, her former counsel.

19           Any other --

20           THE COURT:  You're claiming a privilege on the

21   communications between your client and her accountant?

22           MR. SOBODASH:  When the accountant was helping the

23   attorney consider litigation contentions, yes.

24           THE COURT:  Is that what happened?

25           MR. SOBODASH:  Or transactional contentions, one

1   of the two, yes.

2            THE COURT:  Okay.  Go ahead.

3            MR. SOBODASH:  Those are my major responses, Your

4   Honor.

5            THE COURT:  Okay.  So you're saying you either

6   don't have the material -- there's some materials that you

7   haven't produced because you don't think there was a

8   procedurally correct request for you to produce those

9   documents.  There's other documents that were requested

10  that you don't have or can't find.

11           There's other documents requested that are

12  protected by privilege, and all the other documents have

13  been produced.

14           MR. SOBODASH:  Well, the bulk of --

15           THE COURT:  Albeit it may be in an incorrect

16  format.  That can't be right.

17           MR. SOBODASH:  Yeah.  The bulk of the -- the bulk

18  of the documents -- the bulk of the documents, that is

19  definitely a flub on our end, and the PS -- the format.

20           But I wasn't -- you know, as I set forth in my --

21  what I filed two days ago with the Court, you know, I made

22  every effort to try and ensure that the format was correct

23  and would be readable.  And I -- there was a

24  misunderstanding.

25           But I -- I've been very sick the past couple of

days, but I asked Dr. Martello's assistant to drive her
computer to my office, which is located only two blocks
from my home.  And then I -- I went through and
double-checked everything.

        And he's coming over today to put it all on a PST
format that he's --

        THE COURT:  Are you still ill today?

        MR. SOBODASH:  Yes.

        THE COURT:  Okay.  How long has this --

        MR. SOBODASH:  Well, it's been since Wednesday.
I'm not trying to use it as an excuse, but I --

        THE COURT:  Well, I'm just asking if you're
feeling better today.

        MR. SOBODASH:  Not really.

        THE COURT:  Okay.

        MR. SOBODASH:  But --

        THE COURT:  Without being indelicate, what's the
nature of the illness?

        MR. SOBODASH:  Chest cold --

        THE COURT:  Okay.

        MR. SOBODASH:  -- fever, flu.  Yeah.

        THE COURT:  Okay.  Anything else?

        MR. SOBODASH:  Well, I would just add that
yesterday I did -- you know, I asked that Mr. Norway and I
meet and confer by Email instead of by phone.

1    And so I don't think it's correct to say that I --

2  I didn't want to meet and confer.  I was just asking that

3  we do it by Email this time.

4    So -- but I do -- I'm doing everything I can to

5  get this PST format produced to the other side.

6    THE COURT:  Okay.  Mr. Norway, what do you -- what

7  do you propose the Court to do, that the Court should do to

8  resolve the impasse of other problems that have arisen?

9    MR. NORWAY:  Your Honor, I think your December 18

10  order was very clear that if they didn't provide the

11  responsive documents by December 31 that the plaintiffs

12  would be sanctioned, including dismissal of the case for

13  failure to prosecute.

14    There are numerous documents that have not been

15  produced at this time that are not included in this PST

16  flub up.

17    THE COURT:  Short of dismissal, what do you --

18  what would you have the Court do?

19    MR. NORWAY:  Striking their pleading.

20    THE COURT:  Okay.  That's the same as dismissal.

21  Short of a nuclear bomb on the plaintiffs' case, what would

22  you propose the Court to do that would have a reasonable

23  chance of getting you the information you need to defend

24  your case?

25    MR. NORWAY:  Well, I think, Your Honor, if you

restrict the plaintiff to the documents that they have
produced to date and not permit Dr. Martello to testify as
to privileged communications that have not worked and other
communications that have not been provided to us in the
presentation of her case, that would be an appropriate
sanction.  That would keep the case currently on track.

THE COURT:  Mr. Sobodash, what's your response?

MR. SOBODASH:  Your Honor, it's too severe a
sanction given all the efforts we've made to provide the
documents in a timely manner.

The Emails, we've already produced the Emails in
PDF format.

THE COURT:  Why shouldn't I just say that anything
-- allowing you -- you know, assuming that you can reformat
the materials that you've been provided and provide those
-- those I would consider as having been provided.

But why shouldn't I just prohibit you from using
any other documents that you haven't produced that you say
you can't get ahold of or that you believe are protected by
some kind of privilege?  Why shouldn't I just prohibit you
from using those at trial?

MR. SOBODASH:  Well, I don't understand how the
privilege -- Your Honor, the --

THE COURT:  Well, if you're going to claim
privilege, how are you going to use it at trial?

1          MR. SOBODASH:  Well, exactly.  But I don't want
2     it -- it would be overly broad.  And, Your Honor, I just
3     don't understand what the basis for the --
4          THE COURT:  Why should you be able to sandbag and
5     keep materials from the defendant and then use it at trial?
6          MR. SOBODASH:  Because there's nothing I want to
7     -- I am in plaintiffs' position.  And I want to provide
8     them everything I can.
9          THE COURT:  What I'm saying is --
10          MR. SOBODASH:  I'm doing everything I can to --
11          THE COURT:  -- if you haven't provided it, why
12     should you be able to use it at trial?
13          MR. SOBODASH:  Well, if they're -- if defendants
14     felt that the documents in the second deposition notice
15     were relevant to the time of Dr. Martello's deposition and
16     they wanted us to provide those, we should be able to
17     provide them.
18          THE COURT:  I don't understand what you just said.
19     I'm sorry.  What did you just say?  What if you'd explain
20     it?
21          MR. SOBODASH:  Your Honor, the -- we still have --
22     we still have -- we have an outstanding deposition notice
23     to Walgreens that I've been meeting and conferring with
24     Walgreens about.  And that was served on, I believe,
25     December 17 or December 23.  It may have been December 23.

          And I've been meeting and conferring with their

paralegal to get a document production.

          THE COURT:  Okay.  I'm not talking about

Walgreens.  If you get something from Walgreens and you

produce it, that's fine.  But I'm talking about any

document you have now that you haven't produced to the

defendant.  Why should you be able to use any of that at

trial?

          MR. SOBODASH:  Because -- are you including the

documents that we're trying to produce right now?

          THE COURT:  No, not including the -- any -- if you

produced it in the wrong format and you're going to fix

that, that's fine.  Anything else that you haven't

produced, why should you be able to use that at trial?

          MR. SOBODASH:  Because there's still pending

discovery requests and there's still -- there's still

the -- discovery is still open.  And I'm turning over

everything I see at the point I see it.

          THE COURT:  So you're saying you might come into

possession of something later and you'd want to be able to

use that?

          MR. SOBODASH:  Correct.  There's nothing --

there's nothing I've seen that's responsive and on

privilege that I haven't turned over.

          THE COURT:  Well, I thought you told me there were

1   just a little while ago.

2        MR. SOBODASH:  Well, the response -- when you're

3   saying responsive, I guess what you're saying about the

4   deposition notice?

5        If it's -- that all depends on whether we had to

6   respond to the deposition notice, and you're saying that I

7   have to oppose that so --

8        THE COURT:  Okay.  Are you finished?

9        MR. SOBODASH:  Yes.

10        THE COURT:  Mr. Norway, what's your reply to that?

11        MR. NORWAY:  Your Honor, this is -- this is just

12   another example, sort of practice, that we've seen from

13   plaintiffs in this case.

14        We've made the discovery requests.  Their first

15   production was made in January.  It was represented to us

16   that production was complete.

17        Fastforward to the expert disclosure deadline.  It

18   passes.  The supplemental report of Mr. Adams comes out.

19   For the first time we see an Email that that expert is

20   relying on for the basis opinion.

21        Fastforward.  Once we identified that Email and

22   asked for it, Mr. Sobodash produced on December 1 another

23   Email that we had never seen before.

24        That is why defendants felt that it was necessary

25   to bring their motions to compel.

1          THE COURT:  Do you have a privilege log?  You said

2     one was provided to you?

3          MR. NORWAY:  Yes, Your Honor.

4          THE COURT:  And you say it's inadequate?

5          MR. NORWAY:  Yes, Your Honor.

6          THE COURT:  Do you have it with you here?

7          MR. NORWAY:  Yes, Your Honor.

8          THE COURT:  Can I see it?

9          MR. NORWAY:  May I approach?

10          THE COURT:  Yes, you may.

11          MR. SOBODASH:  The amended --

12          THE COURT:  Just give me a second to look at this,

13     okay?

14          MR. SOBODASH:  Okay.

15          THE COURT:  Okay.  Go ahead, Mr. Sobodash.

16          MR. SOBODASH:  Your Honor, the amended and

17     supplemental privilege log contains everything -- I believe

18     contains everything that's on the privilege log.  There is

19     one that was provided on the 30th and one that was

20     provided on the 31th.

21          THE COURT:  The one I've been given is one dated

22     December 30.

23          MR. NORWAY:  And, Your Honor, you withdrew --

24     there will also be the Email and the supplemental that I

25     was referring to.

         THE COURT:  Okay.  All right.  Mr. Sobodash, what

do you recommend or suggest I do in response to the

existing state of discovery?

         MR. SOBODASH:  Your Honor, I -- if you could give

me, you know, if you want to grant the relief requested by

the plaintiffs' motion of yesterday regarding just the

continuation for the expert's deadline --

         THE COURT:  Well, I'm going to continue that so --

         MR. SOBODASH:  But I think, you know, if you allow

me three or four days, three or four workdays, to get

everything together on my end, I -- I would just ask that

you hold any sanction in abeyance until then.

         THE COURT:  Well, here's what I'm going to do.

I'm going to -- to clear off our docket, I'm going to deny

docket number 50 and 54 without prejudice.

         I think, Mr. Norway, as you indicated, you're

putting together another motion that maybe updates things

and gives more detail about what's not been provided and

what has been provided.

         I'm going to -- Mr. Sobodash, I'm going to give

you one week to provide defendant with complete responses

to document production requests.  And that includes the

information requested in the decus tecum.

         And provide a new privilege log that identifies

more clearly what the document is as opposed to just the

1  recipient. And something that says as to what it is and

2  why it's -- you believe it's privileged.

3          And you should understand that unless it's really

4  clear from the privilege log that there's a privilege, I'm

5  going to -- I'm going to request copies of anything and

6  everything on the privilege log for an in-camera review.

7  And then I'll rule whether it's privileged or not.

8          And then you're to respond fully and completely,

9  including getting the correct format on the electronic

10  files and including full responses to all discovery

11  requests.

12          And by response, you're going to have to -- for

13  example, on the demand letter, you can't just say I've

14  looked for it and I can't find it. You're going to have to

15  give a written response that says this document -- you

16  know, what efforts you've made to locate it and why you

17  haven't located it and affirm that you've made reasonable

18  inquiry with your client in other potential locations and

19  that you can't find it. You just can't come to a hearing

20  and make that kind of representation.

21          But anyway, I'm going to give you a week to make

22  full responses and/or explanations as to why you can't make

23  responses and to get the electronically provided

24  information in the appropriate format as agreed and

25  ordered.

1          And then, Mr. Norway, within ten days, can you

2    file your amended motion, if it's needed?

3          MR. NORWAY:  Is it ten days after we receive the

4    response?

5          THE COURT:  Within a week after receiving the

6    response.

7          MR. NORWAY:  Yes, Your Honor.

8          THE COURT:  Okay.  So you've got a week to get him

9    the stuff, Mr. Sobodash.

10         And you have a week to file any motion to compel

11   or motion for sanctions after that.

12         I don't want there to be any misunderstanding.

13   This is going to be the last hearing like this we're going

14   to have, Mr. Sobodash.  Do you understand that?

15         MR. SOBODASH:  I understand, Your Honor.

16         THE COURT:  And I don't want -- you know, there's

17   not going to be any excuses that are going to be very

18   persuasive.  Hopefully your health gets better over the

19   weekend, you get appropriate assistance in formatting the

20   electronic documents, and you get busy on providing every

21   document that you've got to the defendant so they can

22   prepare their case and get their expert ready and so that

23   you can go ahead and have your trial.

24         MR. SOBODASH:  Thank you, Your Honor.

25         THE COURT:  In terms of defendants' expert

1    deadline, right now it's -- when do you want it till,

2    Mr. Norway?

3          MR. NORWAY:  I believe we asked for a ten-day

4    extension to January 20, Your Honor.

5          THE COURT:  Okay.  Well, I'll grant it, grant that

6    extension.

7          Anything else we need to do?

8          MR. NORWAY:  No, Your Honor.

9          THE COURT:  Mr. Sobodash?

10         MR. SOBODASH:  No, Your Honor.

11         THE COURT:  Anything else that I'm leaving out?

12         All right.  We're in recess.

13         MR. NORWAY:  Thank you, Your Honor.

14         MR. SOBODASH:  Thank you, Your Honor.

15         (Proceedings adjourned at 2:00 p.m)

16

17                C E R T I F I C A T E

18

19         I certify that the foregoing is a correct

20    transcript from the record of proceedings in the

21    above-entitled matter.

22

23    s\Amie R. First, RPR, CRR

24

25