# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

JEANETTE MARTELLO, individually;
and JYM, LLC, a Nevada limited liability
company,

        Plaintiffs,

v.

PRODUCT QUEST MANUFACTURING,
LLC, a Florida limited liability company;
JOHN T. REGAN, individually; and
PRODUCT QUEST MANUFACTURING,
INC.,

        Defendants.

_____/

Case No. 6:12-cv-1304-Orl-22GJK

## DEFENDANTS' RENEWED MOTION FOR SANCTIONS
## AGAINST PLAINTIFFS AND ALTERNATIVE MOTION TO COMPEL

Defendants PRODUCT QUEST MANUFACTURING, LLC, JOHN T. REGAN, and PRODUCT QUEST MANUFACTURING, INC. (collectively, "Defendants") respectfully request the Court render an Order that finds: (1) Plaintiffs in contempt for failing to comply with this Court's December 18, 2013 Order and January 10, 2014 Order; (2) Plaintiffs have unreasonably withheld documents from Defendants and spoliated ESI on the documents they did produce; and (3) Plaintiffs and Counsel for Plaintiffs engaged in vexatious and unreasonable conduct during discovery in this action.

Plaintiffs' steadfast refusal to comply with the Court's discovery Orders has prejudiced Defendants' ability to investigate and defend against Plaintiffs' claims by preventing Defendants from mustering a complete record prior to the

close of discovery.   Thus, Defendants respectfully request that this Court sanction Plaintiffs by striking the pleadings and dismissing this action.

## SUMMARY OF ARGUMENT

The discovery deadline is one week away.  Plaintiffs have been ordered not once, but twice, to respond fully and completely to Defendants' requests for production and to produce all documents responsive to those requests.  As discussed below, Plaintiffs have not produced all responsive documents or provided full and complete responses to the requests.

Indeed, Defendants now know that Plaintiffs have had responsive documents in their possession all along and yet failed to produce such documents in response to the Court's Orders.  Defendants learned this when Plaintiffs' testifying expert, Charles Adams, produced more than two thousand pages of documents that were provided to him by Martello for his review and use in formulating his expert opinions.   Martello forwarded these documents to Adams in October 2013 via email from her Gmail account.  She copied her Counsel on each email.

Plaintiffs have not, however, produced electronic copies of any emails from Martello's Gmail account to date.  Moreover, as discussed below, Plaintiffs represented to Defendants that certain communications from Bradley Watts did not exist when, in fact, they did.   Nor have Plaintiffs' produced all of the communications of their attorney, Tina Walls.  Plaintiffs have steadfastly asserted that such communications are privileged when, in fact, these emails were provided to Plaintiffs' testifying expert in October 2013.

Defendants respectfully submit that together, these and the other actions of Plaintiffs described in this motion, demonstrate that Plaintiffs engaged in a pattern of misconduct warranting dismissal.

## LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g) and Federal Rule of Civil Procedure 37, the parties met in person on the morning of January 24, 2014, to confer regarding Plaintiffs' discovery responses and Plaintiffs' January 17, 2014 production.[1]  Counsel for Plaintiffs contended that the objections served by Plaintiffs on January 17, 2014 were complete, and that Plaintiffs need not provide the information described by the Magistrate Judge during the January 10, 2014 hearing because the Order issued by the Court did not require Plaintiffs to include such information.  Counsel for Plaintiffs also conceded that emails disclosed to and considered by Plaintiffs' testifying expert were no longer privileged and should be removed from Plaintiffs' privilege log.  Counsel also discussed several issues regarding the .pst file produced by Plaintiffs and the lack of production from Martello's Hotmail and Gmail accounts, which are explained more fully below.

## LEGAL AUTHORITY

Federal Rule of Civil Procedure 37(b)(2)(A) provides that if a party "fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders."  The sanctions for failure to comply with a discovery order may include:

---

[1]  The confirmation email sent by the undersigned is attached as Exhibit 1.

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or in part; (iv) staying further proceedings until the order is obeyed; (v) dismissing the action or proceeding in whole or in part; (vi) rendering a default judgment against the disobedient party; or (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A).   "Rule 37 sanctions are intended to prevent unfair prejudice to the litigants and insure the integrity of the discovery process." *Gratton v. Great Am. Commc'ns*, 178 F.3d 1373, 1374 (11th Cir. 1999).   "If it is established that [a party] violated [the] Court's discovery Order, the issues become whether the violations were substantially justified, the prejudice suffered by the Plaintiff, and the 'just' sanctions to impose, if any."   *Lockwood v. Shands Jacksonville Med. Center Inc.*, No. 3:09-cv-376-J-20MCR, 2010 WL 2652469, at *1 (M.D. Fla. July 1, 2010).   "Substantially justified means that reasonable people could differ as to the appropriateness of the contested action."   *United States ex rel. Ragghiani Founds, III, LLC v. Peter R. Brown Const.*, No. 8:12-cv-942-T-33MAP, 2013 WL 5290108, at *3 (M.D. Fla. Sept. 19, 2013).

## <u>APPLICATION</u>

Defendants submit that sanctions are warranted in this case.   As discussed below, Plaintiffs have not fully complied with the Court's discovery orders, and have unreasonably withheld documents responsive to Defendants' requests for production.   Plaintiffs have also unreasonably prevented Defendants from discovering information known to Tina Walls, whose communications were voluntarily waived by Plaintiffs long ago.   These actions were not one-off events.

Taken together, Plaintiffs' actions demonstrate that they engaged in a pattern of misconduct warranting dismissal of this action.

## I.   Plaintiffs Have Not Fully Complied With The Court's Previous Discovery Orders

The Court rendered two discovery orders in this action that required Plaintiffs to "serve full and complete responses to all of Defendants' requests for production" in "ESI format" (Doc. 56) and "in the correct, agreed upon format" (Doc. 66).  Plaintiffs did not comply with the Court's Orders.

Plaintiffs did not serve full and complete responses to all of Defendants' requests for production.  A full and complete response, as the Court informed Counsel on January 10, 2014, requires Plaintiffs to produce all requested documents in ESI format, and if documents have been destroyed or otherwise cannot be found, Plaintiffs must produce an explanation specifying in detail the efforts made to locate the documents.  (Doc. 76, Hr. Tr. 22:12–20.)[2]  Plaintiffs served an objection to the Notice of Deposition Decus Tecum on January 17, 2014, but that document did not provide the information that the Court instructed should be in a full and complete response.  (*See* Ex. 2.)  Plaintiffs did not serve a revised or amended responses to Defendants' First Request for Production at all,

---

[2]  The Court directed Plaintiffs as follows:

> "And by response, you're going to have to – for example, on the demand letter, you can't just say I've looked for it and I can't find it. You're going to have to give a written response that says this document – you know, what efforts you've made to locate it and why you haven't located it and affirm that you've made reasonable inquiry with your client in other potential locations and that you can't find it.  You just can't come to a hearing and make that kind of representation."

(Doc. 76, Hr. Tr. 22:12–20.)

even though the original responses do not contain the information that the Court directed Counsel to provide.  (*See* Ex. 3.)

At the conferral conference on January 24, 2014, Counsel for Plaintiffs contended that the objections served by Plaintiffs on January 17, 2014 were complete, and that Plaintiffs need not provide the information described by the Magistrate Judge during the January 10, 2014 hearing because the Order issued by the Court did not require Plaintiffs to include such information.

In addition, Plaintiffs' production, such as it was, was not organized in any fashion or produced to Defendants as those records were kept in the ordinary course.  This, coupled with Plaintiffs' refusal to provide complete responses, has caused Defendants to expend considerable time and expense reviewing the records to determine what has not been produced, a process which is still on going.  Defendants have determined, however, that the following categories of documents were not fully produced in the proper format:[3]

- Martello's Emails.  On January 15, 2014, Counsel for Plaintiffs produced a .pst file purporting to be the complete .pst file of Martello's e-mails. The .pst file did not contain any sent e-mails, nor did it retain any of the original file or folder structure that would have been created in the ordinary course of business.  It appears that Plaintiffs merely copied the .msg file production that Defendants had previously objected to and placed those into a newly created .pst file.  Plaintiffs did not produce a copy or extract of

---

[3]  Defendants have identified other categories of missing documents; however in the interest of brevity, Defendants only describe in this motion the obvious lapses in the production.

Martello's original .pst file.[4]  The .pst only contained emails received by the account Martello@skindeepworld.com, so at this time Plaintiffs have not produced any .pst or native e-mails from Martello's other email accounts, such as drmartello@hotmail.com or drmartello@gmail.com.

- The January 8, 2007 Demand Letter and Related Emails.  Count I of the Verified Complaint is allegedly based on a demand letter sent by Tina Walls to Regan on January 8, 2007.  No copy of this letter has been produced to date.  Plaintiffs have also not produced all of the emails related to this letter in proper format or otherwise.

Martello testified under oath that Tina Walls told her that Defendants did not respond to the letter.  (Martello Dep. 283:22–285:8.)[5]  According to Martello, Walls' communications that Defendants did not respond forms the grounds for Count I of the Complaint.  (*Id.*)  Walls, however, testified under oath that "she must have provided" the letter to Martello.  (Walls Dep. 98:20–99:5.)[6]  Walls also testified that the letter was in her files and that she reviewed the letter the morning of January 3, 2014.  (*Id.* 33:13–

---

[4]  As Magistrate Judge Baker explains in *Optowave Co., Ltd. V. Nikitin*, No. 6:05-cv-1083-Orl-22DAB, 2006 WL 3231422, at *9 (M.D. Fla. Nov. 7, 2006), an original .pst file would contain outgoing "sent" emails that would correspond to messages in the inbox that had an indication that a reply was sent.  "Sent" emails cannot be "accidentally" deleted.  *Id.*  Send and received emails are important here because Martello has placed at issue her communications with Walls by testifying that Walls did not inform her of Defendants' response to the demand letter.

[5]  The complete transcript for Martello's November 26, 2013 deposition is filed with the Court at Doc. 53.

[6]  Excerpts of the deposition transcript of Tina Walls are attached hereto as Exhibit 4.

22.)  Walls did not, however, produce the letter in response to Defendants' subpoena duces tecum or when asked to do so by Defendants.

• Tina Walls' File.  Walls testified under oath that she scanned her file and sent it to Martello "within the last few years" when Martello "requested a copy of [her records."]  (*Id.* 11:5–12:24.)  No copies of this file have been produced so far as Defendants can establish, and there is no entry on Plaintiffs' Privilege Log regarding the request for or transfer of this file.

• Bradley Watts Emails.  Watts was an accountant[7] who was involved in the negotiation and winding up of the joint venture.  He has since passed, and his records are not available to be discovered except from Plaintiffs. Counsel for Plaintiffs represented during at least two telephone conferences that no emails between Martello and Watts existed, and the only Watts emails in their records were listed on Plaintiffs' privilege log. Those representations were not accurate, however.  There are emails that were not produced to Defendants from Watts, some of which were emailed on October 13, 2013 to Adams by Martello.  (*See* Composite Ex. 5.)  Notably, the communications from Watts were sent to Martello's Gmail account—the account for which Plaintiffs have not provided a full production in proper format.[8]

---

[7]  Plaintiffs have never asserted, and therefore have waived, any claim that Watts' emails are protected from disclosure by accountant-client privilege.

[8]  The attached emails were produced by Adams at his deposition in response to Defendants document requests.  Plaintiffs' production was not bates stamped. These emails were also never identified on any of Plaintiffs' privilege logs.

In addition, Plaintiffs' privilege log is not complete.  The log contains no entries for the redacted documents produced in January 2013 (Bates Nos. Martello 001–Martello 867); no entries for communications after January 8, 2010; and no entries for Martello's communications with James Peterson, a Florida lawyer retained by Martello to negotiate the winding up of the joint venture.  As shown in Exhibit 6, as well as confirmed by Walls' testimony, there most certainly were communications between Martello and Walls after January 8, 2010.  Also, as indicated in Exhibit 7, there are also emails between Martello and Peterson that are not reflected on Plaintiffs' privilege log.

The privilege log is also objectionable because Plaintiffs have withheld documents on the grounds of privilege which were disclosed long ago to Plaintiffs' testifying expert.  On October 13, 2013, Martello emailed (with Counsel copied) the withheld documents to Adams.  It is axiomatic that these emails "los[t] their privilege status when disclosed to, and considered by, a testifying expert." *Johnson v. Gmeinder*, 191 F.R.D. 638, 647 (D. Kan. 2000).  At no time prior to Adams' deposition on January 16, 2014, did Plaintiffs inform the Court or Defendants that these documents had been disclosed to Adams, despite Defendants' repeated requests for all documents produced to Adams.[9]

Put simply, Plaintiffs have not fully complied with the December 18, 2013 Order or the January 10, 2014 Order.

---

[9]  The first file produced by Adams contained 51 pages of emails previously withheld on the basis of privilege.  In fact, the production occurred several months before Plaintiffs served their amended privilege log, which still contains these documents.  (*See* Ex. 8).

## II.   Plaintiffs Have Unreasonably Withheld Documents Responsive to Defendants' Requests For Production

In response to the Court's January 10, 2014 Order, Counsel for Plaintiff produced one (1) .pst file that contained only emails received by one (1) email account of Plaintiff, while neglecting to produce any responsive documents in the agreed upon format sent by Plaintiff, or received by her Hotmail and Gmail accounts.   Defendants believe that Plaintiffs have withheld hundreds, if not thousands, of pages of responsive documents in direct contravention of the Court's previous orders.

The only reason Defendants know that these documents exist is that Plaintiffs' testifying expert produced 2,122 pages of documents that he received from Plaintiffs, most of which have never been produced to Defendants or were produced in redacted form.   Plaintiffs have yet to provide a credible explanation why they have steadfastly refused to produce these documents in response to Defendants' First Request for Production, served on November 29, 2012 (hereinafter the "First Request"); Defendants' Re-Notice of Taking Videotaped Deposition Duces Tecum of Plaintiff Jeannette Martello, served on November 19, 2013 (hereinafter the "Duces Tecum"); and Defendants' Second Request for Production, served on December 2, 2013 (hereinafter the "Second Request").

For example, Defendants sought in their First Request:

> Copies of all correspondence, including but not limited to letters, electronic mail, and facsimiles, between Jeannette Martello and one or more of the following during the time period July 1, 2005 to July 28, 2012:
> a.  John Regan;
> b.  Bill Jennings;
> c.  Product Quest Manufacturing, Inc.;

    d.  Product Quest Manufacturing, LLC;
    e.  Christine Lunday;
    f.  Imogene Communications;
    g.  Dr. Jeannette Martello Products, LLC;
    h.  Marilyn Radikof;
    i.  Todd M. Kwait;
    j.  Bradley Watts;
    k.  Any other person employed by or contracted by Product Quest
        manufacturing, Inc. or Product Quest Manufacturing, LLC;
        and/or
    l.  Walgreens Drug Company.

Plaintiffs previously represented that their first production on January 23, 2013, and their supplemental production on June 23, 2013, would address any concern Defendants had about the adequacy of Plaintiffs' discovery responses. (*See* Ex. 9.)  Notwithstanding that material misrepresentation, Defendants have been able to identify several documents that evidence correspondence between Plaintiff and several of the individuals identified above that were never produced by the Plaintiffs, either in their first production, or the Court-ordered January 15, 2014 production.  (*See* Composite Ex. 5.)[10]  Likewise, Defendants' Duces Tecum requested that Plaintiffs "Produce copies of any documents provided to or reviewed by any person obtained by Plaintiffs, or any person acting on their behalf, as an expert regarding any of the issues in this proceeding."  Charles Adams, Plaintiffs' testifying expert, produced more than two-thousand pages of documents, most of which was never produced by the Plaintiffs, either in their first production or the Court ordered production on January 15, 2014.

Compounding Plaintiffs' unreasonable efforts to deny Defendants the ability to conduct discovery into Plaintiffs' claims is the fact that Plaintiffs have yet

---

[10]  Defendants represent that the attach documents are true and correct copies of the documents received by Charles Adams.

to produce a single, native email sent from the account Martello@skindeepworld.com, or  any native emails sent to or from the accounts Drmartello@hotmail.com or drmartello@gmail.com.   As the Court ordered responsive documents must be produced in "ESI Format" (Doc. 56), Plaintiff's failure to produce any of the requested documents from these sources has severely limited Defendants' ability to adequately and properly defend themselves.

Finally, while Plaintiffs did in fact produce a single .pst file on January 15, 2014 (412 days from the date initially requested by the Defendants), the .pst appears to have been created after the litigation had commenced and not, as requested, how it was kept in the ordinary course of business.  This method of production spoliated much of the requested ESI necessary for the Defendants to conduct a proper review, including (1) removing the then existing folder structure, (2) removing any chain designations so that Defendants could not determine whether emails had been responded to, (3) altering creation and edit timestamps on each produced email from the .pst, and (4) separating the sent emails corresponding to the emails in the "inbox."

Defendants are not in a position to detail the extent of Plaintiff's willful violation of the Court's Order; rather, Defendants can only compare what Plaintiffs' have represented is a complete production to documents Defendants have received from other sources, and in that comparison, Plaintiffs' production falls woefully short of "full and complete."

### III.   Plaintiffs Have Waived All Claims Of Privilege
###        For Tina Walls' Communications

As noted above, the emails provided to Adams "los[t] their privilege status when disclosed to, and considered by, a testifying expert." *Johnson*, 191 F.R.D. 638, 647.   When Plaintiffs voluntarily chose to allow Adams to rely on these communications, Plaintiffs waived privilege, under Fla. Stat. § 90.507[11] and Federal Rule of Evidence 502(a), as to those communications and all undisclosed communications on the same subject matter.   *Chick-Fil-A v. ExxonMobil Corp.*, No. 08-61422-Civ, 2009 WL 3763032, at *4 (S.D. Fla. Nov. 10, 2009) (noting the scope of waiver extends to all materials that "ought in all fairness be considered together" with the waived communications).

Further, Walls' communications with Martello were waived when Plaintiffs placed them at issue in this action.   *See Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1418 (11th Cir. 1994).[12]   The *Cox* Court held that waiver not only takes place "(1) when a client testifies concerning portions of the attorney-client communication, (2) when a client places the attorney-client relationship directly at issue, and (3) when a client asserts reliance on an attorney's advice as an element of a claim or defense," but also when "the party asserting the privilege

---

[11]   This section provides that a "person who has a privilege against the disclosure of a confidential matter or communication waives the privilege if the person . . . voluntarily discloses or makes the communication when he or she does not have a reasonable expectation of privacy, or consents to disclosure of, any significant part of the matter or communication."   Fla. Stat. § 90.507.

[12]   Florida law also provides that "a party who bases a claim on matters which would be privileged, the proof of which will necessitate the introduction of privileged matter into evidence, and then attempts to raise the privilege so as to thwart discovery, may be deemed to have waived that privilege."   *Home Ins. Co. v. Advance Machine Co.*, 443 So. 2d 165, 168 (Fla. 1st DCA 1983).

placed information protected by it in issue through some affirmative act for its own benefit." *Id.* at 1417.

Here, Plaintiffs have asserted privilege over communications that: (1) Martello disclosed during her deposition, and (2) Plaintiffs placed directly at issue. For example, Plaintiffs' breach of Contract claim in Count I is dependent on Martello's testimony that Walls told her that Defendants never responded to the January 8, 2007 demand letter.  (Martello Dep. 285:1–8.)  By testifying as to a privileged communication and making such testimony central to the proof of Plaintiffs' claims, Plaintiffs have waived privilege.

In addition, Plaintiffs have waived privilege as to all communications from Walls sent in December 2005 during the negotiations leading up to the final Operating Agreement.  Plaintiffs' alter ego and fraud claims are based on a single email from John Regan to Walls sent December 27, 2005, during these negotiations.  Martello testified that she relied on her attorneys for the interpretation of documents.  (Martello Dep. 79:20–80:6.)  Hence, it is necessary for Defendants to determine what advice Walls provided to Martello during the pre-contract negotiations and whether she relied on it.

Plaintiffs have prevented Defendants' inquiries by withholding Walls' communications related to Regan's email and the negotiations, thereby preventing Defendants (and the Jury) from placing his single email in the context of the larger negotiation.  This refusal amounts to using privilege as a sword, not as a shield, by preventing discovery relevant to the reasonableness of Plaintiffs' reliance on the representations in Regan's single email.  *See, e.g.*, *M.G.J. Indus.,*

*Inc. v. Greyhound Fin. Corp.*, 801 F. Supp. 614, 617 (M.D. Fla. 1992) ("An action for fraud requires allegations of a false statement regarding a material fact, knowledge of its falsity, the intention that the lie be acted upon, and injury to the other party caused by <u>reasonable reliance</u> on the representation." (emphasis added)).

In view of the above, Defendants respectfully submit that Plaintiffs have waived any claim of privilege as to these matters.[13]

### IV.   Plaintiffs' Pattern Of Misconduct Warrants The Dismissal Of Plaintiffs' Claims As Sanctions

Plaintiffs' dilatory conduct during the course of this litigation, particularly as it applies to their repeated failure to provide full and complete discovery, warrant the complete dismissal of their claims.  Plaintiffs have repeatedly ignored specific directives from the Court, purposefully withheld documents that are highly relevant and responsive to Defendants numerous requests, and now, at the eleventh hour of discovery, claim that certain responsive documents were destroyed when Martello's computer crashed.

Despite repeated orders from the Court for the Plaintiffs to produce all responsive documents, and despite Counsel for Plaintiffs own representation that the production is complete,  Plaintiffs have yet to produce a complete and full production, as specifically detailed above.  Moreover, Plaintiffs produced to their expert, in October 2013, privileged documents, some of which they have claimed

---

[13]  If the Court were to dismiss this action, it need not find waiver.  If it does not, then Defendants respectfully request an Order finding that no privilege attaches to Walls communications and files and permitting Defendants an opportunity to engage in the discovery that has been frustrated by Plaintiffs' actions.

on their privilege log[14] and others that are conspicuously absent.  Even though Defendants specifically requested those documents on October 21, 2013—well after they were produced to the expert—Plaintiffs have failed to produce a single document.  (*See* Ex. 11.)  Plaintiffs' conduct has prevented Defendants from conducting full and fair discovery.

Worse yet, Plaintiffs are now claiming that at some time shortly before the filing of the present suit, Martello's computer crashed, which completely destroyed all of Martello's sent email.  (*See* Ex. 12.)  Counsel for Defendants attempted to gather more information about this alleged destruction, as for more than a year of discovery, Plaintiffs made no mention of this computer crash. (*See* Ex. 13.)  Counsel for Plaintiffs' explanation at the January 24, 2014 was insufficient to explain the spoliation caused by Plaintiffs' conduct.[15]

Plaintiffs reckless disregard for the orderly administrative of discovery has caused Defendants to incur significant additional costs to defend this action, and Plaintiffs continued failure to produce responsive and relevant documents, documents which their own expert has relied on, has unfairly limited the ability of Defendants' to properly defend themselves.

In view of the serious pattern of misconduct in which Plaintiffs have engaged, Defendants respectfully submit that no sanction less than dismissal will

---

[14] Attached as Exhibit 10 is Plaintiffs' Second Amended Privilege log.  The entries that are highlighted are documents that were produced to Plaintiffs' testifying expert several months prior to the production of the privilege log.

[15] Defendants understand that the inbox and outbox are stored in one .pst file. Computer damage that affected the outbox, as Plaintiffs allege, would also affect the inbox.  If Plaintiffs produced an accurate and representative .pst, the inbox and outbox should have been both preserved, which suggests that this production was not prepared from Martello's original Microsoft Outlook .pst file.

suffice.  Plaintiffs fell short of responding in full to <u>any</u> of Defendants' requests <u>and</u> fell far short of fully complying with not one, but two, Court Orders.  While mistakes are sometimes made, the conduct here was not a mistake.  It was a studied refusal to comply fully and completely with the Court's Orders and the discovery obligations imposed by the Federal Rules of Civil Procedure.

Like the conduct in *Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1542–43 (11th Cir. 1993), Defendants specifically requested the production of communications which were unreasonably withheld by Plaintiffs.  And the Court's December 18, 2013 and January 10, 2014 Orders expressly required Plaintiffs to produce these documents.  Plaintiffs did not, nor did Plaintiffs comply with the Court's order to provide full and complete responses to Defendants' discovery requests.  Indeed, Counsel for Plaintiff specifically represented that Watts' emails did not exists when, in fact, he was copied on correspondence forwarding Watts' emails to Plaintiffs' testifying expert.

Plaintiffs and Plaintiffs' Counsel have not provided a credible explanation for their repeated refusal to produce these documents.  *See Malautea*, 987 F.2d at 1545 (requiring the refusing party to provide "a credible interpretation of how it interpreted the discovery orders").  These documents existed and were in Plaintiffs' possession.  Plaintiffs could have, but did not, produce them in response to Defendants' requests for production.  The Court informed Plaintiffs in two Court Orders and during two hearings if Plaintiffs or their Counsel fail "to fully comply" with the Court's orders, sanctions will be imposed.  Yet, Plaintiffs and their Counsel <u>still</u> have not produced all responsive documents.

Still further evidence of a pattern of misconduct includes the representations of Counsel concerning the production.  Counsel for Plaintiffs was copied on emails disclosing the Walls' and Watts' communications in October 2013.  He steadfastly maintained—up until the conferral meeting today—that the disclosed communications from Walls are privileged.  He maintained this unsupportable position throughout Walls' deposition on January 3, 2014.  And he maintained this unsupportable position during two hearings at which the issue of privilege was addressed.  Counsel, however, did not inform the Court that Walls' communications were disclosed to Adams in October 2013.  If Counsel had produced Adams' documents as ordered in December, or informed the Court of the disclosure, a significant amount of judicial effort and expense would had been avoided.

Further, Counsel continued to represent to Defendants that Martello did not have any emails to or from Bradley Watts.  Martello did have emails from Watts, however.  Counsel for Plaintiffs was copied in October 2013 on emails forwarding Watts' emails to Plaintiffs' testifying expert.  In these circumstances, it was objectively unreasonable for Counsel to represent to Defendants time and time again that no emails from Watts existed.

Moreover, the materiality of Watts' emails suggest that the documents were deliberately withheld from production.  For example, Watts advised Martello on October 11, 2010, in response to a question concerning contract damages for excess inventory:

> I think that they covered themselves so they could make purchases
> independently of your input.  That still does not mean that the

> decisions they made are not subject to evaluation as to whether they are prudent business decisions that were right for business. It just makes your ability to challenge their decisions harder. . . .

(*See* Ex. 14.)  Of course, Plaintiffs ability to raise a claim—as they do in this case—that Defendants inflated the joint venture's inventory at Plaintiffs' expense would be much easier <u>without disclosing this email</u>, or any of Watts' other communications, to Defendants.

There were too many "innocent mistakes" relating to too many material documents by Plaintiffs and their Counsel for this to be anything but deliberate conduct.  In view of Plaintiffs' refusal to fully comply with the Court's Orders, and the material nature of the documents withheld by Plaintiffs, Defendants are left at the close of discovery with no opportunity to fully develop a defense against Plaintiffs' claims.  In these circumstances, dismissal is a just and proper sanction. *See Immuno Vital, Inc. v. Telemundo Grp., Inc.*, 203 F.R.D. 561, 573–4 (S.D. Fla. 2001) (holding dismissal is an appropriate sanction where a party used "repeated dilatory tactics," including claiming responsive documents did not exist when they did, to delay discovery and impact the opposing parties ability to prepare effectively for trial).[16]

---

[16]  Given that Plaintiffs have not produced all responsive documents in the face of two Court Orders, Defendants can see no reason why they would produce documents if the Court issued a third such order.  However, if the Court were inclined not to impose dismissal as a sanction, the Court should not allow Plaintiffs to benefit from their misconduct.  The Court should at least impose sanctions such as prohibiting Plaintiffs from relying on any document that was not produced to Defendants before October 2013; striking the testimony of Adams, who relied on the withheld documents to form his opinions; and requiring an adverse inference instruction be given to the jury.  *See Smith v. Sohanaan Dev. Inc.*, No . 6:12–cv–1369–Orl–18DAB, 2013 WL 5720163, at *3-4 (M.D. Fla. Oct. 1, 2013) (sanctioning party for ignoring two court orders to produce documents by prohibiting that party from relying on the withheld documents on

## CONCLUSION

In sum, Plaintiffs have engaged in a deliberate pattern of withholding documents responsive to Defendants' document requests during discovery in this action.  The documents withheld by Plaintiffs are material, and by unreasonably delaying or preventing their disclosure, Plaintiffs have prejudiced Defendants' investigation of and defense against Plaintiffs' claims.   Hence, Defendants respectfully request the Court to render an Order that:

1. Finds Plaintiffs in contempt for failing to comply with this Court's December 18, 2013 Order and January 10, 2014 Order;

2. Finds that Plaintiffs have unreasonably withheld documents from Defendants and spoliated ESI on documents they produced;

3. Finds that Plaintiffs and Counsel for Plaintiffs engaged in vexatious and unreasonable conduct during discovery in this action;

4. Strikes Plaintiffs' pleadings as sanctions for this conduct;

5. Awards Defendants costs and attorney's fees incurred as a consequence of Plaintiffs and Plaintiff's Counsel's conduct; and

6. All such other relief the Court deems warranted under the circumstances.

Respectfully submitted this 24th day of January, 2014.

/s/  ROBERT M. NORWAY
RICHARD E. MITCHELL, ESQ.
Florida Bar No.: 0168092
rick.mitchell@gray-robinson.com
ROBERT M. NORWAY, ESQ.
Florida Bar No.: 0711421
robert.norway@gray-robinson.com
GRAYROBINSON, P.A.

---

summary judgment or at trial and finding an adverse inference instruction was warranted for communications that were not produced).

301 East Pine Street, Suite 1400
Post Office Box 3068
Orlando, Florida 32802-3068
(407) 843-8880  Telephone
(407) 244-5690  Facsimile

*Lead Trial Counsel for Defendants
Product Quest Manufacturing, LLC;
John T. Regan; and Product Quest
Manufacturing, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 24th day of January, 2014, I electronically filed the foregoing with the Clerk of the Court by using the ECF system.

**/s/  ROBERT M. NORWAY**
ROBERT M. NORWAY, ESQ.