

United States District Court

Middle District of Florida

Orlando Division


Jeannette Martello, Plaintiff

6:12-CV-1304-ORL-22-GJK

v.


Product Quest Manufacturing, LLC; et al., Defendant(s)


## DECLARATION OF JEANNETTE MARTELLO IN SUPPORT OF ENLARGEMENT OF TIME TO FILE JOINT FINAL PRETRIAL STATEMENT AND FOR A RULE 16 CONFERENCE

1. On March 24, 2014, I received an email from Defendants that an in person joint pretrial meeting was scheduled for April 16, 2014. In his email, Mr. Norway represented that I had the "initial burden of assembling these materials." **Exhibit 1.** In this email, Mr. Norway represented that we would "prepare a Joint Final Pretrial Statement" and "prepare and exchange a final exhibit list" at the in person meeting. This sounded like a working meeting where we would work together on achieving this outcome.

2. Prior to leaving for Florida, I attempted to Meet and Confer with Defendants' attorney Robert Norway. I wanted to have a Meet and Confer with Mr. Norway so that I would be in accordance with The Honorable Magistrate Judge Gregory J. Kelly's Order regarding filing either a Motion to Supplement or a Motion to Amend to submit the CD's with evidence

regarding the Opposition to the Motion for Summary Final Judgment and the Opposition to the Daubert Motion. On April 9, 2014, I sent Mr. Norway an email which is attached as **Exhibit 2.** My email was met with disdain by Mr. Norway. His email response and my email back to him are attached as **Exhibit 3.**

3. We met over the phone on April 11, 2014. During the Meet and Confer, I informed Mr. Norway that I would be filing a Motion to Supplement in accordance with The Magistrate Judge's Order. Mr. Norway asked me what my legal analysis showed. I did not have all the case law in front of me. *Mr. Norway said that he could not do a Meet and Confer with me until I had done all of the legal analysis.* Since then, I have spoken with another lawyer in Florida and he informed me that Mr. Norway was "playing with me" and that Mr. Norway was incorrect regarding the Meet and Confer.

4. I was informed of the funeral that attorney Rick Mitchell wanted to attend and did not oppose the Motion for a modification. In fact, I sent Mr. Mitchell my condolences. **Exhibit 4.**

5. If anything could have gone wrong during this trip, it did. On the morning of April 16, 2014, I discovered that I had not brought my laptop power cord with me on the trip. Instead, I realized that I brought a power cord for a portable printer that I left in California. I immediately relayed this problem to Defendants' attorney Robert Norway. **Exhibit 5.**

6. I went and purchased a new lap top power cord from Office Depot on the morning of April 16, 2014. A copy of the receipt is attached as **Exhibit 6.**

7. Upon my return to the hotel, I notified Mr. Norway that I had a power cord. I then sent him a series of emails asking questions since I wanted to make sure that I had what they wanted. Most of the emails sent to Mr. Norway went unanswered. Any responses are included in the set of emails produced here as **Exhibit 7.**

8. The meeting was postponed until 12:30 p.m. so that Defendants' attorney Rick Mitchell could attend a funeral and still attend a portion of the Joint Pretrial Conference via phone.

9. For the first time ever, I was instructed at nearly 11 a.m. (before a 12:30 p.m. meeting) that I was do bring paper copies of Exhibits with me to the in person meeting. **Exhibit 8.**

10. This new request necessitated finding a print center in the area that could accommodate the urgent need for print copies of the Exhibits. The hotel that I was staying at did not have a functioning printer in the business center and the personnel at the front desk could not print out the number of documents I needed.

11. I was able to find an Office Depot in the Orlando area who tried to copy as many exhibits for me before the meeting which was postponed until 2 p.m. to 4:30 p.m. to accommodate my technical difficulties and the recent need to print out paper exhibits.

12. I was able to obtain 70% of the exhibits that I emailed to Office Depot before the 2 p.m. meeting. I called Debi Robbins, secretary for Mr. Robert Norway and Mr. Rick Mitchell to see if they wanted me to pick up the exhibits first or after the meeting. I called Ms. Robbins at 1:45 p.m. Ms. Robbins instructed me to pick up the exhibit copies before the meeting. After leaving Office Depot, I updated Defendants via email that I had just left the store. The time was now 2:11 p.m. **Exhibit 9.**

13. The meeting started closer to 2:30 p.m. We began with my Exhibits. Mr. Norway took printed notes and objected on several grounds to each and every exhibit except for a single one that was produced by the Florida Secretary of State website. He even objected to Exhibits that Defendants had produced and objected based on authentication grounds.

14. Mr. Rick Mitchell appeared telephonically via phone for approximately less than 30% of the meeting that lasted from 2:30 p.m. until approximately 5 p.m. or a little thereafter. Mr. Mitchell never appeared in person. My understanding is that Mr. Mitchell is lead trial counsel. The funeral that Mr. Rick Mitchell attended took place at 11 a.m.

15. While we were going through my Exhibits, Mr. Mitchell asked me how many Exhibits I had to give them. I felt like I was wasting their time.

16. At one point, I realized that my count on the Exhibits was off from theirs. I asked them if we could go through them to make sure that I was organized with respect to Exhibits. They both told me (Mr. Norway and Ms. Robbins) that we would do that at the end of the meeting.

17. Towards the end, to be more time efficient, Mr. Mitchell directed me to go through their Exhibits at the same time. Debi Robbins handed me the Exhibits one by one.

18. After doing this, Mr. Norway went to his office to find a CD that he was planning to use as an Exhibit but that he had not taken a photo of. Apparently, he had already turned in the CD to the Court Clerks and it had been placed on a shelf. He said that he had a copy of the CD somewhere in his office and went to look for it.

19. At the same time, Ms. Robbins said that she was going to go find a copy of the responses to my interrogatories that they were planning to use as an Exhibit. She didn't know where they were. To date, this document that they propose to use as an Exhibit has not been provided to me.

20. I was instructed by Mr. Norway to continue to email Office Depot any other exhibits that I was planning to use since I informed him that all of the Exhibits had not been emailed to Office Depot the a.m. of April 16, 2014 and that not all of them had been printed for them.

21. Both Mr. Norway and Ms. Robbins indicated that Exhibit 50 was too large for them to copy. Could they just email it to me? Although I was having hundreds of pages of exhibits printed out for them, some of them over 200 pages long, I acquiesced. A copy of the email that she sent to me is attached as **Exhibit 10.**

22. Mr. Norway did not have proposed Voir Dire questions ready. I pointed out to him that these were supposed to be supplied as well to The Court. He ruffled through the papers in front of him regarding the instructions and verified that we were supposed to prepare Voir Dire questions as well.

23. I had proposed Voir Dire questions and an Exhibit List present on my computer. Mr. Norway wanted to print out everything by hand in his proposed Joint Pretrial Statement that had small blanks present on it.

24. I suggested that he send me the statement via computer so that I could insert my proposals to the Joint Pretrial Statement. Mr. Mitchell suggested to Mr. Norway that they email me all word documents so that I could fill in the blanks with my proposals. Mr. Norway said that he would do that at the end of the meeting.

25. We needed to leave the conference room at 5 p.m. We never had a chance to go over my Exhibits that were off by a number. I never received a copy of the CD that Mr. Norway was considering using as an Exhibit. Ms. Robbins never provided me with a copy of the Exhibit regarding interrogatories that they were planning on using.

26. After leaving the Gray Robinson law offices, I went back to Office Depot to get more Exhibit copies made for Defendants. I cancelled my return flight to make sure that there would be no problems with production.

27. I returned to the building where the law office of Gray Robinson was located. I left a box of papers on top of the mail area. Ms. Robbins stated that she picked up the box of exhibit papers that I left there. **Exhibit 11.**

28. If the trip couldn't have been worse, when I tried to turn on my lap top (after I had been able to email the exhibits to Office Depot), I was faced with a black screen.

29. I have been informed that my lap top is dead and can't be resuscitated. The contents are trying to be salvaged by the computer person.

30. This lap top problem has forced me to re-create the work that I had already performed. This has delayed production to Defendants' attorneys.

31. I regret any inconvenience these problems may have caused The Court.

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.

Executed and Respectfully Submitted,

Jeannette Martello, Plaintiff, In Pro Se

## CERTIFICATE OF SERVICE

### Martello vs. Product Quest et al, Case number 6:12-cv-1304-Orl-22GJK

I hereby certify that Mr. Robert Norway and Mr. Rick Mitchell of the law firm of Gray Robinson will be served by hand delivery by Attorneys Legal Services with the **Declaration of Jeannette Martello in Support of Enlargement of Time to File Joint Final Pretrial Statement and for a Rule 16 Conference.** A copy of these documents will be served on them at their offices located at Gray Robinson, 301 E. Pine Street, Suite 1400, P.O. Box 3068, Orlando, Florida 32801.

*Jeannette Martello*

Jeannette Martello, Plaintiff, In Pro Se

P.O. Box 914

South Pasadena, CA 91031

drmartello@gmail.com

(626) 993-8501