United States District Court

RECEIVED

Middle District of Florida

2014 JUN -4 PM 4: 36

Orlando Division

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

Jeannette Martello, Plaintiff

6:12-CV-1304-ORL-22-GJK

v

Product Quest Manufacturing, LLC; et al., Defendant(s)

## EMERGENCY MOTION FOR STAY OF ORDER

This case presents significant questions regarding the fundamental right to privacy that have already been decided by The Eleventh Circuit and Federal Court precedent.

According to the United States Supreme Court, the fundamental right to privacy is a Constitutional right present in the penumbras of the Bill of Rights. *Griswold v. Connecticut,* 381 U.S. 479 (1965), 85 S. Ct. 1678,14 L. Ed. 2d 510,1965 U.S. "The Fourth Amendment explicitly affirms the 'right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.' The Fifth Amendment, in its Self-Incrimination Clause, enables the citizen to create a zone of privacy which government may not force him to surrender to his detriment. The Court stated many years ago that the Due Process Clause protects those liberties that are 'so rooted in the traditions and conscience of our people as to be ranked as fundamental.' " *Griswold supra* quoting and citing *Snyder v. Massachusetts,* 291 U. S. 7, 291 U. S. 105. In *Gitlow v. New York,* 268 U. S. 652, 268 U. S. 666."

Plaintiff *In Pro Se* hereby respectfully moves for an emergency stay of a district court

**EMERGENCY MOTION FOR STAY OF ORDER**

disclosure order that compels Plaintiff's production of irrelevant, private, sensitive information contained in plaintiff's individual federal and state tax returns.  This Order requires the disclosure of these confidential materials and sensitive information by 5 p.m. on June 4, 2014, a mere five days after the entry of the order itself.  The May 30, 2014 order appears as **Doc. 167.**  The Honorable Judge Anne C. Conway noted that if Plaintiff did not provide said tax returns (without seal, Protective Order or *in camera* review) that failure to do so "will immediately result in the imposition of **SANCTIONS** against Plaintiff which may result in the dismissal of this case."

The threat of sanctions is very real.  In fact, The Honorable Judge Gregory J. Kelly wrote in his June 2, 2014 Order (**Doc. 173**) (after the Notice of Appeal was filed to The United States Court of Appeals for the Eleventh Circuit) that Plaintiff had a "final opportunity to produce the tax returns at issue" and "warning Plaintiff that failure to do so will immediately result in sanctions."  The district court denied the emergency stay motion on Friday, May 30, 2014.  (**Doc. 171**).  Absent such a stay, the confidentiality of the tax documents will be irretrievably lost and this Court will be deprived of its ability to review the district court's order.  Florida law has found that the unnecessary disclosure of tax returns is tantamount to letting the "cat out of the bag" type information that should be protected against disclosure. *Woodward v. Berkery*,714 So.2d 1027, Nos. 97-0398, 96-2483, (Fla. 4th DCA 1998).  Defendants' attorneys have already threatened Plaintiff that any information that they obtain they will use to injure her outside the context of this litigation. *Martin-Johnson Inc. v. Savage,* 509 So.2d 1097, 1100 (Fla.1987),

Because the disclosure deadline set by the district court is tomorrow, June 4, 2014, Plaintiff respectfully asks for an immediate stay of the order while The United States Court of Appeals for the Eleventh Circuit considers this underlying stay Motion.  If the disclosure order is not stayed, the documents (Plaintiff's tax returns) at issue will have to be released, the statutory and constitutional

**EMERGENCY MOTION FOR STAY OF ORDER**

interests underlying the confidentiality of those documents will be irretrievably lost, and this Court's ability to review the district court's decision will be lost as well. Under these circumstances, this Court should preserve the status quo by granting an immediate stay.

Appellate courts have the well-settled authority "to prevent irreparable injury to the parties or to the public resulting from the premature enforcement of a determination which may later be found to have been wrong." *Scripps-Howard Radio v. FCC,* 316 U.S. 4, 10 (1942). Moreover, the All-Writs Act, 28 U.S.C. § 1651 (a), which authorizes federal courts to issue "all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law," empowers courts of appeals to stay district court orders whose performance would moot the case and thereby divest the appellate court of jurisdiction. In this case, a temporary stay is warranted both to "prevent irreparable injury to the parties" from "premature enforcement" of a disclosure order that "may later be found to have been wrong," and to preserve this Court's jurisdiction over an appeal of that order. The Court Orders that Plaintiff is appealing meet the collateral order requirements as set forth in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949).

When an individual is subject to an order to disclose private information, the denial of a stay pending appellate review of the order effectively forces the individual to "let the cat out of the bag, without any effective way of recapturing it if the district court's directive [were] ultimately found to be erroneous" by a reviewing court. *Irons v. FBI,* 811 F.2d 681, 683 (1st Cir. 1987). In this case, defendants are seeking plaintiff's personal and private state and federal tax returns for the years 2007 to 2012 which implicate plaintiff's fundamental right to privacy. If these records are disclosed, their confidentiality will be instantly forfeited and cannot be recovered at a later point. See, *e.g. Providence Journal Co. v. FBI,* 595 F.2d 889, 890 (1st Cir. 1979) (noting that the "confidentiality [of disclosed records] will be lost for all time").

**EMERGENCY MOTION FOR STAY OF ORDER**

The irreparable injury to Plaintiff that would result from a denial of an immediate stay far outweighs any impact that such a stay might have on Defendants.

## INTRODUCTION

Plaintiff is a Hispanic female physician and Boalt Hall graduate who is not a practicing attorney.[1]  Plaintiff has been forced to represent herself *In Pro Se* when the District Court relieved her lawyer of his duties less than four months before trial term begins on July 1, 2014.  This Order permitting withdrawal of her only attorney is also being appealed.

Only after Plaintiff filed her lawsuit in the Middle District of Florida, Orlando Division, was she informed that she had filed the case in probably the "most anti-Plaintiff" division of all the Federal Districts throughout the United States.  Plaintiff naively believes that Justice is blind and that the law will be equally applied to all.  Unfortunately, this has not been the case.  Plaintiff is a member of an under-represented class in Orlando.  According the United States Census Bureau, only 25.4% of Orlando is comprised of Hispanics.

The fact that Plaintiff is a female has not helped her situation.  A report to the Florida Supreme Court found that gender bias exists, "[W]omen litigants tend to have their memory and credibility questioned more often than similarly situated men."[2]  Throughout this case, Plaintiff has found that she has been treated differently than similarly situated litigants who have not been Hispanic and not been female.  Eleventh Circuit precedent, The Federal Rules of Civil Procedure and Florida case law have not been applied unto her as they have been applied to other similarly situated litigants.

---

[1] Plaintiff took the California Bar exam within the last two years and failed by less than 80 points.
[2] Executive Summary Report of the Florida Supreme Court Gender Bias Study Commission.  This Report found that "The Judicial Qualifications Commission should act promptly on all allegations of gender bias by judges, with an appreciation for the vulnerability and difficulties involved in bringing such a complaint.  Sanctions for inappropriate judicial conduct should include measures designed to protect complainants from retribution."

**EMERGENCY MOTION FOR STAY OF ORDER**

## THE DISCLOSURE ORDER

The Honorable Judge Anne C. Conway explained why she was ordering plaintiff to produce her tax returns (**Doc. 167**):

> "In this case, Plaintiff failed to present any opposition to Defendants' Third Motion to Compel. Even assuming Plaintiff had raised the   arguments in her Objection when the matter was before the Magistrate Judge, he did not err, clearly or otherwise, in ordering Plaintiff to produce her tax returns.  Plaintiff presents no argument as to why her tax returns are confidential communications that should be privileged,  and the returns are clearly relevant as to damages (i.e., whether Plaintiff previously derived income from her name and likeness) and reliance (i.e., relying on the allegedly deficient financial disclosures for the purpose of obtaining tax benefits).  Plaintiff's Objection will be overruled and the Magistrate Judge's Order upheld."

Plaintiff attempted to obtain a Motion for a Protective Order regarding her tax returns.  This was the response of The Honorable Judge Anne C. Conway regarding Plaintiff's Motion for a Protective Order:

> "Plaintiff's Motion for Protective Order is woefully untimely, having been filed more than four months after Defendants first requested her tax returns, nearly three months after Defendants filed their Third Motion   to Compel, more than three weeks after Magistrate Judge Kelly ordered her to produce the returns, and less than three months from the beginning of the trial term for this matter.  Even if the Motion were timely, the Court has already determined that the tax returns are relevant and not privileged by virtue of overruling Plaintiff's Objection to the Magistrate Judge's   Order on Defendants' Third Motion to Compel."

## STANDARD OF REVIEW

Plaintiff respectfully incorporates by reference the governing standard as set forth in Federal Rules of Civil Procedure 26(b)(1), 26(c), Rule 26.2(a), Rule 8(c), Rule 72 and Florida Rules of Civil Procedure 1.280(b)(1).  Federal Rule of Civil Procedure 26(c)(1)(A).

## Florida Case Law on the Production of  Tax Returns

Florida case law exists on the compelled production of tax returns during discovery.  Most of the cases in which Courts have compelled the production of tax returns involve Defendants.  Only a

## EMERGENCY MOTION FOR STAY OF ORDER

small percentage of cases involve Plaintiffs. The cases in which tax returns were compelled by the Court are listed below.   In these cases, Plaintiffs were compelled to produce their tax returns when they placed their income at issue. Plaintiff has not placed her income at issue in the claims that she alleges in her Complaint. Defendants have had to produce their tax returns and financial records in cases which involved punitive damages and trademark infringement, both of these claims were pled in Plaintiff's Complaint.

**Plaintiffs' Tax Returns Requested During Discovery**

- *Maddow v. Procter & Gamble Co., Inc.*, No. 95-9576, 107 F.3d 846, United States Court of Appeals 11th Circuit, 1997.  United States Court of Appeals for the Eleventh Circuit found that "plaintiffs were substantially justified in initially refusing discovery." Court found that plaintiffs were compelled to produce their tax returns in this case that involved age discrimination and in which lost earnings and income was placed directly at issue.

- *Camp v. Correctional Medical Services*, No. 2:08-cv-227-WKW (WO), (M.D. Ala. Feb. 17, 2009).  Defendants' Motion to Compel Plaintiff's tax returns denied. "The relevancy of the plaintiff's income tax returns to their claims for damages is tenuous at best." Defendants argued that "it needs the income tax returns to confirm the "full picture" of the plaintiff's income. This argument is pure speculation and conjecture by the defendant."

- *Popov v. George & Sons Towing*, No. 2:12-cv-00123-SPC-UAM, (M.D. Fla. March 6, 2012 ).  Motion to Compel production of Plaintiff's tax returns denied as not relevant. Defendant argued that the tax returns "could be used to impeach the Plaintiff's credibility at trial." The Court found that "his tax returns are simply not relevant to the issues in this case."

**Defendants' Tax Returns Requested During Discovery**

- *Woodward v. Berkery*, 714 So.2d 1027, Nos. 97-0398, 96-2483, (Fla. 4th DCA 1998).  The Court decided that celebrity Tom Jones' tax returns did not need to be produced based on his fundamental right of privacy in this child support modification case.

- *Capco Properties, LLC., et al. v. Monterey Gardens of Pinecrest Condominium, et al.*, No. 3D08-1127, Lower Tribunal No. 06-5685, (Fla. 3d DCA 2008).  In this case, Defendants were

not compelled to produce their tax returns to prove financial worth since neither accounting nor punitive damages had not been pled in the Complaint.

- *Coach, Inc. v. Swap Shop, Inc.*, No. 12-60400-CIV, 2013 WL 4407064, (S.D. Fla. Aug. 13, 2013). Defendants' tax returns compelled to be produced in a case which involved trademark infringement, unfair trade practices, copyright infringement and damages for sales income derived from the Defendants' sale of infringing products.

- *Dunkin' Donuts, Inc. v. Mary's Donuts, Inc.*, No. 01-0392-CIV, 2001 WL 34079319, (S.D. Fla. Nov. 1, 2001). Defendants' tax returns were compelled to be produced for Plaintiff's case which involved alleged breaches of franchise agreements; trademark infringement; trade dress infringement; unfair competition; underreported income; underpaid franchise fees; failure to maintain proper financial documentation for inspection as required by the franchise agreement; operation of an unlicensed donut shop and failure to cease operations of the donut shops once Plaintiffs terminated the franchise agreements.

- *United Subcontractors, Inc. v. Darsey, Jim Romeka, Construction Solutions & Supply, LLC*, No. 3:13-cv-603-J-32MCR,(M.D. Fla. Jan. 8, 2014). The Court compelled production of defendant Romeka's tax returns.

- *United States of America v. Real Property*, No. 04-81135CIV, 444 F.Supp.2d 1258 (S.D. Fla. April 5, 2006). Defendants' tax returns were found relevant based on his claims that he was the "innocent owner of the money owed to him" under a contract. Plaintiff United States of America was suing on an action involving the forfeiture of real property based upon stock fraud.

- *UnitedHealth Group, Inc. v. Dowdy*, 8:06-cv-02111-SDM-EAJ, (M.D. Fla. Nov. 9, 2006). Defendants' tax returns were ordered to be produced in this case that involved ERISA subrogation from Defendant's third party settlement for accidental injuries.

- *Equal Employment Opportunity Commission v. Dimare Ruskin, Inc.*, No. 2:11-CV-158-FTM-36SPC, (M.D. Fla. Aug. 23, 2011). Defendants' tax returns were found relevant and were to be produced in a claim in which punitive damages were pled and in which Defendants' financial worth was important.

- *Regions Bank v. MDG Frank Helmerich*, LLC No. 2D12-2427, 118 So.3d 968, (Fla. 2d DCA, 2013). Post judgment debtor tax returns were ordered to be produced on a deficiency judgment.

**EMERGENCY MOTION FOR STAY OF ORDER**

- *Rocket Group, LLC v. JATIB,* No. 4D13-134, (Fla. 4th DCA 2013).  Defendants' tax returns ordered to be produced with a confidentiality order.

- *Soliday v. 7-Eleven, Inc.* No. 2:09-cv-807-FtM-29SPC, 2010 WL 3928586 (M.D. Fla. Oct. 4, 2010).  Defendants' tax returns ordered to be produced in a case involving punitive damages and intentional civil rights employment discrimination.

- *New Hampshire Indemnity Co., Inc. v. Reid,* 3:05-CV-1280-J-12MCR, (M.D. Fla. July 27, 2006).  Defendants' tax returns compelled due to their relevance in proving whether or not Defendant's son was a "family member" or a dependent for the automobile policy involving a fatal car accident.

- *Eberhardt v. Eberhardt,* No. 95-3986, 666 So.2d 1024, (Fla. 4th DCA 1996) *Certiorari* denied for this case which involved the compelling of the production of tax returns from Defendants in a case which involved claims for accounting, fraud, breach of contract, constructive trusts and rescission of a deed.

- *Shipboard Electrical v. Newcastle,* No. 3:11-cv-582-J-32MCR, (M.D. Fla. Sept. 7, 2012).  Plaintiff's Motion to Compel production of Defendants' tax returns denied.  "Plaintiff's stated reason for requested discovery is to show that Defendant lacked funds to pay Plaintiff "due to mismanagement or improper budgeting."  The *Shipboard* Court found that the "rationale is not sufficient to support the requests for financial documents because it bears no relevance to the claims at issue."

## STATEMENT OF FACTS

Plaintiff and Defendants executed a written contract comprised of an Operating Agreement and an attached License Agreement on 1/30/2006 (**Exhibit 1**).  Plaintiff filed a Verified Complaint on 8/24/2012 for breach of contract, fraud, breach of fiduciary duties, trademark infringement, misappropriation of name or likeness.  Punitive damages were pled. (**Doc. 1**).  Defendants filed a general denial Answer without a Statute of Limitations affirmative defense pled on 10/22/2012 (**Doc. 25**).  Hearings regarding discovery and other matters were held on 12/18/2013 (**Exhibit 2**) and on 1/10/2014 (**Exhibit 3**).  Plaintiff was forced to terminate the services of her lead attorney on February 2, 2014.  On February 3, 2014, Plaintiff moved to maintain local attorney Rick Sierra as counsel for the

**EMERGENCY MOTION FOR STAY OF ORDER**

corporate entity and to substitute in as counsel for herself **(Doc. 82)** as well as request an extension of a deadline **(Doc. 83)**. These requests were denied by The Court. Plaintiff secured the services of attorney Augustus Sol Invictus who filed two separate Motions for Substitution on February 14, 2014 **(Doc. 90 and Doc. 92)**. Both of Invictus' substitutions of counsel were denied by The Court on February 28, 2014 and Plaintiff's attorneys of record (including Mr. Invictus) were threatened with sanctions **(Doc. 96)**.

**Defendants' Conduct:** Plaintiff has informed The Court of a) instances of intentional misrepresentations regarding material facts being made to The Court with documentary evidence **(Doc. 107)**; b) instances of spoliation and bad faith dilatory acts **(Doc. 107 and Doc. 147)** and c) instances of sanctionable conduct through the use of redacted attorney client privileged documents that Defendants claimed to have destroyed **(Doc. 146)**. Plaintiff has informed The Court that Defendants have held Exhibits to Plaintiff's expert deposition hostage and have not turned them over to the court reporting agency to create a complete, cohesive deposition. **(Doc. 156)**. Most recently, Plaintiff has moved for an Order to Show Cause why Defendants Should not be Held in Contempt of Court for continuing a deposition **(Doc. 169)** when The Court clearly and concisely denied a continuation **(Doc. 73)**. Defendants have played by their own rules and shown disrespect to The Court by filing jury instructions, verdict forms and a Joint Pretrial Statement that included affirmative defenses that they never pled **(Doc. 159)** even though The Honorable Judge Anne C. Conway ruled on January 6, 2014 that they could not amend their pleading to include the affirmative defense of the Statute of Limitations **(Doc. 60)**.

A five hour evidentiary hearing was held on March 11, 2014 that took place in front of The Honorable Magistrate Judge Gregory J. Kelly **(Exhibit 4)**. Plaintiff was Ordered to produce copies of her individual federal and state tax returns via a March 18, 2014 Order of The Honorable Magistrate

**EMERGENCY MOTION FOR STAY OF ORDER**

Judge Gregory J. Kelly **(Doc. 109).** In this Order, The Honorable Magistrate Judge Gregory J. Kelly denied Plaintiff's Motion to Compel as to the production of Defendants' tax returns, purchase orders (to verify gross sales income) and various other documents. Plaintiff filed a timely Objection to the Order on April 4, 2014 **(Doc. 130)** and a Motion for Protective Order on April 11, 2014 **(Doc. 133).** The Honorable Judge Anne C. Conway affirmed The Order requiring Plaintiff's production of individual tax returns and withdrew her Motion for Protective Order. **(Doc. 167).** In this Order, terminating sanctions were threatened if Plaintiff did not produce her individual state and federal tax returns by 5 p.m. on June 4, 2014 (not under seal, without a Protective Order and without *in camera* review so as to ascertain whether or not any relevant material was present in the returns). A Motion for an Emergency Stay Order was denied by the District Court on May 30, 2014. **(Doc. 171)**

## ARGUMENT

### A. Plaintiff failed to Present any Opposition to Defendants' Third Motion to Compel

At the time that Defendants' Third Motion to Compel was filed, Plaintiff was represented by attorney Justin Sobodash, an attorney who represented to The Honorable Magistrate Judge Paul A. Voss that he had "responded to the motions to the extent defendants have met and conferred about them." In response, The Honorable Magistrate Judge Paul A. Voss censured Sobodash, "[T]hat's not what a response to a motion is. I think you know that responding to a motion means to file a response." (page 10 of **Exhibit 3**).

Sobodash is the same lawyer who was questioned by The Honorable Magistrate Judge Gregory J. Kelly on March 11, 2014 during an evidentiary hearing:

- "THE COURT: And it's very difficult to reconcile your statements that you were so ill, that you were not capable of dealing with the case in a professional manner when at the same time you're billing your client 200 hours. That's very difficult to understand how

**EMERGENCY MOTION FOR STAY OF ORDER**

you can reconcile those statements." (**Exhibit 4,** page 35, lines 23 to 25 to page 36, lines 1 to 2).

- "THE COURT: If I could just back up, to the
  extent you're arguing that her testimony indicates that
  everything was produced, there is testimony in the record
  that unequivocally establishes that not everything was
  produced; and although you profess to have been working
  diligently to make a full production and have represented to
  this Court on multiple occasions that you've acted diligently
  in order to procure the documents responsive to the
  defendants' request, in fact we know that you didn't even
  open your e-mails, your own e-mails, which would have shown
  what needs to be produced. . .

  THE COURT: Had you simply opened your e-mails, you
  would have been in a position to make a better production.
  Had you requested documents from Mr. Adams, you would have
  been able to make a more adequate production." (**Exhibit 4,** page 100,
  lines 15 to 25 to page 101, lines 1 to 5).

- "MR. SOBODASH: . . .you know, it's not -- I guess it's not my
  standard practice to look in my own e-mails first. It's my practice
  to look at my clients, where they source the documents.

  THE COURT: Well, you should open e-mails. You're on CM/ECF. You
  receive notifications from this court via e-mail. As you indicated, it's inexcusable
  that you didn't open your e-mails. So that's where we find ourselves in this particular
  hearing today. It's unfortunate, but that's where we are.  What remedy do you think
  the Court should impose, given the misconduct that we've discussed here today?

  MR. SOBODASH: Your Honor, I think it would be most appropriate
  that there be a monetary sanction on me." (**Exhibit 4,** page 101, lines 16 to 25
  to page 102, lines 1 to 3).

- "THE COURT: You're a member of the California Bar, correct?

  MR. SOBODASH: I am, Your Honor.

  THE COURT: Is that your sole state of admission?

  MR. SOBODASH: Yes, Your Honor.

**EMERGENCY MOTION FOR STAY OF ORDER**

THE COURT: Have you ever been disciplined?

MR. SOBODASH: No, Your Honor.

THE COURT: Have you ever had grievances filed?

MR. SOBODASH: No, Your Honor.

THE COURT: How long have you been practicing, sir?

MR. SOBODASH: Thirteen years." **(Exhibit 4,** page 103, lines 13 to 25)

### B.  Plaintiff was not Allowed to Raise any Arguments Regarding the Production of Tax Returns While in Front of The Magistrate Judge

Plaintiff was not allowed to address The Honorable Magistrate Judge Gregory J. Kelly until the

end of the Evidentiary Hearing (page 135 of 138 of **Exhibit 4)**.  Prior to that, Plaintiff rose her hand as

if she was in grammar school in an effort to be heard on various matters.  The Honorable Magistrate

Judge Gregory J. Kelly made a point of ignoring Plaintiff as if she was a fly on a wall even though

Plaintiff had flown in from California out of respect for The Court.  Attorney Sobodash had appeared

via telephone.   In an effort to introduce evidence, Plaintiff asked attorney Rick Sierra to interrupt the

proceedings which were so decidedly one-sided.  Even then, Plaintiff was ignored.  Plaintiff's

attorneys of record who were desirous of withdrawing from representation did not fully prepare for this

hearing since and were fearful of sanctions from The Court.  The section of the testimony regarding

Plaintiff's tax return production will be listed first.

- Plaintiff was holding her hand up during The Honorable Judge Gregory J. Kelly's discourse.

Plaintiff was ignored as she had been throughout the hearing.  No testimony was allowed regarding tax

return production.  Even though Plaintiff had never pled loss of income, lost wages or the value of her

name or likeness, her personal federal and state tax returns were found "reasonably calculated to lead

**EMERGENCY MOTION FOR STAY OF ORDER**

to the discovery of admissible evidence." (**Exhibit 4,** page 104, lines 22 to 25 with continuation onto

page 105, lines 1 through 13):

> "THE COURT: All right. Moving on to the defendants' third motion to compel, which is at
> docket entry 69, I've reviewed the requests. It's specifically request numbers one, two and three.
> All of those seek tax returns, state and federal, for certain years. There's no opposition that's
> been filed to that motion. In addition, these requests simply request tax returns that were filed.
> So, to the extent that there's an objection on the basis of privilege, I find it's not appropriate.
> The tax returns have been filed. So, to the extent anyone is asserting an accountant-client
> privilege or something like that, these are documents that have been filed with the state or with
> the I.R.S. I'm going to go ahead and grant the third motion to compel with respect to requests
> one through three. I find they're reasonably calculated to lead to the discovery of admissible
> evidence."

The many areas where Plaintiff was denied the opportunity to present evidence are present at the

following locations of **Exhibit 4**:  1) page 42, lines 14 to 25 and page 43, lines 1 to 4; 2) page 48, lines

19 to 25 with continuation onto page 49, lines 1 to 5 and 3) page 84, lines 5 to 16.  The Honorable

Magistrate Judge Gregory J. Kelly later allowed Plaintiff to testify regarding the e-mail situation.

**Exhibit 4,** page 86, lines 9 through 12:

> "THE COURT: *At the risk of belaboring this and against my better judgment,* but in the
> interest of having a complete record, I'm going to go ahead and allow Dr. Martello to testify, to
> the extent she wants to." *(emphasis added).*

### C.  Plaintiff Was Ordered to Produce Her Individual Tax Returns Even Though they Are Not Relevant Even Though The Information was Obtained Through Her Deposition Testimony

The Honorable Judge Anne C. Conway notes that "[P]laintiff presents no argument as to why

her tax returns are confidential communications that should be privileged, and the returns are clearly

relevant as to damages (i.e., whether Plaintiff previously derived income from her name and likeness)

and reliance (i.e., relying on the allegedly deficient financial disclosures for the purpose of obtaining

tax benefits)."  Plaintiff has argued that her tax returns were not relevant to the claims or defenses in

this case.  When Plaintiff stressed this point, she was ignored.  When Defendants argued this point,

they were taken at their word.

## EMERGENCY MOTION FOR STAY OF ORDER

### D.  Defendants Were Not Ordered to Produce Their Tax Returns Even Though They are Relevant to Plaintiff's Claims

An anti-Plaintiff pattern is emerging.  Plaintiffs filed a Motion to Compel tax returns on January 20, 2014.  Plaintiff had pled punitive damages, trademark infringement, fraud, breach of fiduciary duties, alter ego and the claim that Defendants had not distributed profits in accordance with the contract.  Defendants noted in their Defendants' Response in Opposition to Plaintiffs' Motion to Compel Documents (**Doc. 85**) that:

> "*Defendants' tax documents are also not relevant to the subject matter of the claims and defenses in this case*. Further, Plaintiffs have not demonstrated a compelling need for the disclosure of the tax documents as required by *Dunkin'Donuts, Inc. v. Mary's Donuts, Inc.*, No. 01-0392-CIV, 2001 WL 34079319 (S.D.Fla. Nov. 1, 2001), *Pendlebury v. Starbucks Coffee Co.*, No. 04-80521-Civ, 2005 WL 2105024 (S.D. Fla. Aug. 29, 2005); and other cases." *(emphasis added)*.  (**Doc. 85**)

Defendants' tax returns are totally relevant to Plaintiff's claims yet they have not been required by The Court to produce them.  At the March 11, 2014 evidentiary hearing, The Honorable Magistrate Judge Gregory J. Kelly found on page 130, lines 7 to 14 of **Exhibit 4**:

> "THE COURT: Having heard nothing, based on the evidence and testimony that was presented here -- I don't need argument, in the interest of time -- I'm going to deny the plaintiffs' motion to compel in its entirety. I'm convinced that the responsive documents, consistent with the defendants' response to request numbers 15 and 16, were produced; and that with respect to request number 24, there is no contract that was negotiated on behalf of the company."

The fact that Defendants were not required to produce their tax returns when Plaintiff pled claims that made these documents completely relevant boggles the mind.  It made one wonder whether or not The Court had read either a) the Complaint with its seventeen well-pled claims <u>or</u> b) Defendants hastily composed General Denial Answer which negligently left off the knee-jerk affirmative defense of Statute of Limitations.


**EMERGENCY MOTION FOR STAY OF ORDER**

### E. Plaintiff's Tax Returns are Not "Clearly Relevant" with Respect to Damages or Reliance

"Good cause" exists since plaintiff has a privacy right to her confidential financial information and therefore the severity and likelihood of the perceived harm exists. The March 18, 2014 Motion to Compel Order was drawn without precision in that it compelled the production of tax returns for the years 2007, 2008, 2009, 2010, 2011 and 2012. These tax returns are not relevant to the claims or defenses pled. The Order to Compel Plaintiff's tax returns was made contrary to Eleventh Circuit and Florida precedent. An availability of a less onerous alternative exists and was taken advantage of by Defendants who acquired the information from Plaintiff's own deposition testimony. The duration of the Order appears to exist indefinitely. Furthermore, Plaintiff was not given the opportunity to provide her private, financial information *in camera* for The Honorable Judge Gregory J. Kelly to decide whether or not any of the tax returns contained relevant information. Also, no confidentiality order or protective order was issued to protect Plaintiff's financial information that was compelled to be provided. When a balancing of interests test is applied, it is apparent that Plaintiff will be irreparably harm by being forced to provide irrelevant, intrusive, private and confidential tax returns that span a total of six years. For the reasons noted below, Plaintiff Martello respectfully prays for a Protective Order in accordance with Federal Rule of Civil Procedure 26(c)(1)(A) forbidding the disclosure or discovery of her tax returns so as to be in accordance with the law.

Defendants' "Relevance" Allegation Number One:

In their Third Motion to Compel (**Doc. 69**), Defendants argue why Martello's tax records are relevant:

> "Martello's tax records are relevant in that they contain information relating to Plaintiffs' *claimed damages or which will lead to the discovery of such information.* Martello's tax returns will contain information concerning the sources of her income, including income from her name and likeness or lack thereof. Thus, the returns are

**EMERGENCY MOTION FOR STAY OF ORDER**

> *relevant to the damages sought by Martello in her claims for misappropriation of her name and trademark infringement." (emphasis added).*

Plaintiff's tax returns have no relevance to any of the defenses pled by Defendants in their Answer that are required by the scope of discovery limitations enunciated in Federal Rule of Civil Procedure 26(b)(1) and Florida Rule of Civil Procedure 1.280(b)(1).  On page 9 of 16 of their Answer (**Doc. 25**) Defendants pled a general denial to Plaintiff's misappropriation claim.  With respect to Plaintiff's claims of trademark infringement, Defendants also pled a general denial on page 9 of 16.  (**Doc. 25**)

Defendants claim that Martello's tax records are relevant in that they "will contain information concerning the sources of her income, including income from her name or likeness or lack thereof." Martello did not plead personal loss of income or plead any element with respect to her income nor did Martello plead any loss of future earnings.  A search of the entire Complaint filed on August 24, 2012 reveals that the only time that the word "income" appears is on page 4 of **Exhibit 1**, under Count I – Breach of Contract by Quest, Inc. and Quest LLC – Accounting, paragraph 23, where Plaintiff refers to income statements.  A review of Defendants' Answer reveals that the word "income" does not appear anywhere else in the contract.

Therefore, Defendants' "relevance" allegation number one is not relevant to any claim or defense pled. *Capco supra.*  Plaintiff should not be compelled to produce her individual federal and state tax returns.

Defendants' "Relevance" Allegation Number Two:

In their Motion for Summary Final Judgment, Defendants note that "2007 was the only year in which DJMP made a net profit." (page 3 of **Doc. 93**)  Defendants declared that "DJMP wrote off its remaining inventory of specialized product components in 2010, and wrote off its remaining finished goods inventory as unsalable in 2011."  (page 4 of **Doc. 93**)  Therefore, DJMP had an "operating loss"

**EMERGENCY MOTION FOR STAY OF ORDER**

in years 2008, 2009, 2010, 2011 and 2012 and inventory write offs occurred in the years 2010 and 2011. Throughout their own argument regarding the "relevance" of Martello's tax returns, Defendants have already admitted that there is no need for Plaintiffs' tax returns for 2007 since there was no operating loss or write off of inventory in that year.

Let's look at Martello's deposition with respect to the questions regarding tax returns for the years 2008, 2009, 2010, 2011 and 2012. Since JYM, LLC is a "single member entity", pass through of tax benefits would pass unto Martello's personal income tax returns:

Year 2008: (**Doc. 53-2**, page 30 of 42, page 242, lines 15 to 25):

> "Q. At the top it says Part III. Do you see the ordinary business income loss of negative $ 20,041?
> A. Yes.
> Q. So did you report that loss on your personal tax return for 2008?
> A. That is my understanding from my accountant.
> Q. And did you, did you or JYM, LLC send a section 8 Notice of Default to Product Quest based upon the Schedule K-1 issued to JYM, LLC for 2008?
> A. No."

Year 2009: (**Doc. 53-2**, page 34 of 42, page 261, lines 22 through 25 and then continues onto page 262, lines 1 to 12):

> "Q. Defendants' 53, this is the Form 1065 U.S. Return of Partnership for DJMP for 2009 – wait. Yeah. Let me direct you to the K-1. That's second from the back.
> A. Yes.
> Q. Is that a true and correct copy of the K-1 issued to the partner named JYM, LLC for 2009?
> A. Yes. It's at my personal and business address.
> Q. And the amount of ordinary business income loss in the top right?
> A. Negative 4299.
> Q. Did you take that income loss as a deduction on your personal tax return for 2009?
> A. I am sure my accountant did that.
> Q. Okay. Did you or JYM send a section 8 Notice of Default to Product Quest based upon the 2009 K-1 issued to JYM, LLC?
> A. No."

**EMERGENCY MOTION FOR STAY OF ORDER**

Year 2010:  (**Doc. 53-2**, page 39 of 42, page 278, lines 9 through 12):

"Q.  Okay.  And did you claim – did you take that ordinary business income
loss of 97,973 on your personal income tax form for the year 2010?
A.  Yes."

(**Doc. 53-2,** beginning on page 265, lines 21 to 25 and continuing onto page 266, lines 1 to 4 of page

36 of 42):

"Q.  Okay.  This is a – is this a true and correct copy of the 2010 K-1 issued by DJMP to JYM,
LLC?
A.  Looks like it, uh-huh.
Q.  And the ordinary income, ordinary business income loss, how much?
A.  Negative 97,973.
Q.  And did you report that loss on your personal tax return for the 2010 year?
A.  I'm sure my accountant did."

(**Doc. 53-2,** page 266, lines 5 through 10 on page 36 of 42:

"Q.  Okay.  And did  you do a section 8 – you or GYM (sic) do a section 8 Notice of Default to
Product Quest based upon the 2010 K-1 at Defendants' 56?
A.  No."

Year 2011:  (**Doc. 53-2**, page 39 of 42, page 278, line 25 with continuation onto page 279, lines 1 to

10):

"Q.  Please find attached your 2011 K-1?
 A.  This thing looks like it's cut and pasted.  It doesn't look anything like –
Q.  Well, it's printed in a –
A.  Weird.
Q.  It's printed in a format.
A.  It looks like it's cut and pasted.
Q.  My question is do you remember – does this refresh your recollection that Mr. Jennings
sent you a copy of the 2011 K-1?
A.  No, it does not."

**EMERGENCY MOTION FOR STAY OF ORDER**

The reason why Plaintiff does not remember being provided with a K-1 for 2011 is because she was not provided with one by Defendants.   This fact is documented by one of the last email exchanges with Product Quest's Chief Financial Officer Bill Jennings.

Defendants argue that Martello's federal and state tax returns to prove that she accepted tax benefits in the years that there were operating losses.  Defendants received this very same information from Martello during her deposition when she readily admitted that she derived tax write offs during the years of 2008, 2009 and 2010.  Therefore, Defendants do not have a "compelling need" for Martello's tax returns since they already obtained this information through her deposition testimony. As previously noted, Martello never received a K-1 for the years 2011 or 2012.  The K-1's for the years 2011 and 2012 were first discovered during this litigation.

In each area listed above regarding questions on tax returns, Martello was asked whether she sent a Section 8 Notice of Default.  It appears that the "notice of default" affirmative defense is the reason for Defendants' request for Martello's tax returns.  Defendants appear to rely on a "notice of default" affirmative defense during Martello's deposition.  In fact, the words "notice of default" appeared no less than 28 times throughout the deposition.  Defendants never pled a "notice of default" affirmative defense in their Answer.  In fact, when Defendants filed a Motion to Amend on December 16, 2013 (nearly a month after conducting Martello's initial deposition on November 26, 2013), they never asked for leave to assert the additional affirmative defense of "notice of default".  This "notice of default" affirmative defense was pled for the first time with the affirmative defense of "first sale" in Defendants' Motion for Summary Final Judgment filed with The Court on February 14, 2014. **(Doc. 93).**

According to The Federal Rules of Civil Procedure Rule 8(c), all affirmative defenses need to be pled in the responsive pleading.  If an affirmative defense is not pled, it is waived.  In the Eleventh

**EMERGENCY MOTION FOR STAY OF ORDER**

Circuit and in Florida, a "notice of default" defense is an affirmative defense. *Century 21 Real Estate LLC v. Perfect Gulf Properties, Inc.*, No. 6:08-cv-1890-Orl-28KRS (M.D. Fla. Feb. 17, 2010); *In Re Villamont-Oxford Associates Ltd.*, Bankruptcy No. 97-9832-8G1, 230 B.R. 445, (M.D. Fla. April 17, 1998); *In Re Venice-Oxford Associates Ltd. Partnership*, Bankruptcy No. 97-9831-8G1, 236 B.R. 791, (M.D. Fla. April 17, 1998); *Auto-Owners Ins. V. Tomberlin, Young & Folmar Ins.*, No. 2:11-cv-468-WHA (M.D. Ala. July 24, 2012), 880 F.Supp.2d 1236; *Krauser v. Biohorizons, Inc.*, No. 10-80454-CIV-MARRA (S.D. Fla. Sept. 1, 2010); *Aerojet-General Corporation v. Kirk*, No. Civ. A. No. 1534 (N.D. Fla. Sept. 21, 1970), 318 F.Supp. 55; *Bickerstaff v. US Bank National Association*, No. 1D13-3115 (Fla. 1st DCA 2014); *Seale v. Regions Bank*, No. 4D12-3869, 121 So.3d 649, (Fla. 4th DCA 2013); *DiSalvo v. Suntrust Mortgage, Inc.*, No. 2D11-2707, 115 So.3d 438, (Fla. 2d DCA 2013); *Kurian v. Wells Fargo Bank, Nat. Ass'n*, No. 4D11-3098, 114 So.3d 1052, (Fla. 4th DCA 2013); *Judy v. MSMC Venture, LLC*, No. 2D11-1896, 100 So.3d 1287, (Fla. 2d DCA 2012); *Congress Park Off. V. First-Citizens Bank*, No. 4D11-4479, 105 So.3d 602, (Fla. 4th DCA 2013); *Cerron v. GMAC Mortgage, LLC*, No. 2D11-3425, 93 So.3d 456, (Fla. 2d DCA 2012); *Boye v. Citimortgage, Inc.*, No. 2D11-2604, (Fla. 2d DCA 2012); *Godshalk v. Countrywide Home Loans*, No. 5D10-2376, 81 So.3d 626, (Fla. 5th DCA 2012); *Bryson v. Branch Banking and Trust Co.*, No. 2D10-3360, 75 So.3d 783, (Fla. 2d DCA 2011); *Babe's Plumbing, Inc. v. Maier*, No. 6678, 194 So.2d 666, (Fla. 2d DCA 1966)

Martello's tax returns are not relevant to the issues of this case as required by Federal Rule of Civil Procedure 26(b)(1) and Florida Rule of Civil Procedure 1.280(b)(1). Martello never placed her income at issue in the case and 2) Defendants never pled the "notice of default" affirmative defense in its responsive pleading. Since the threshold need of relevance is not met in this case, Martello's tax returns should not be compelled to be produced.

**EMERGENCY MOTION FOR STAY OF ORDER**

Defendants' "Compelling Need" Allegation Number One

In their Third Motion to Compel, Defendants argue why there is a "compelling need" for

Plaintiff's individual tax returns:

> "There is also a compelling need for such tax records *because Plaintiffs have failed to produce a single agreement, license, or assignment concerning the licensing of Dr. Martello's name and likeness, despite the existence of a special purpose entity intended to be used by Martello as the nominal owner of her intellectual property assets.* Such documents have been the subject of several of Defendants' requests for production. The failure to produce licenses and agreements suggests that *Martello did not value her name and likeness in the same manner as her other intellectual property assets." (emphasis added).*

Defendants argue that a "compelling need" exists for Martello's tax returns *to prove a negative*, that is,

the *non-existence* of an "agreement, license or assignment concerning the licensing of Dr. Martello's

name and likeness."   Defendants argue further "[t]he failure to produce licenses and agreements

suggests that Martello did not value her name and likeness in the same manner as her other intellectual

property assets."   How Plaintiff Martello valued her name and likeness has nothing to do with any

single defense that was pled by Defendants in their Answer.   Based on Federal precedent, whether or

not a person licenses her name or likeness is irrelevant.

## Whether or Not Plaintiff Previously Derived Income from Her Name or Likeness is Irrelevant based on Federal Court Precedent

Many courts have recognized, as a property right, a person's use of his or her name and

likeness. *Haelan Laboratories v. Topps Chewing Gum,* 202 F.2d 866 (2d Cir.), *cert. denied,* 346 U. S.

816, 74 S.Ct. 26, 98 L.Ed. 343 (1953); *Ettore v. Philco Television Broadcasting Corp.,* 229 F.2d 481

(3d Cir. 1956); *Uhlaender v. Henricksen,* 316 F.Supp. 1277 (D.Minn.1970). *See also Grant v. Esquire,*

*Inc.,* 367 F.Supp. 876 (S.D.N. Y.1973).   The commercial value of such a right stems from a person's

ability to control its use.   *Price v. Hal Roach Studios, Inc.,* 400 F. Supp. 836, 843 (S.D.N.Y. 1975).


**EMERGENCY MOTION FOR STAY OF ORDER**

The importance of an individual's given name was emphasized by The United States District Court for the Central District of California in *Abdul-Jabbar v. General Motors Corporation*, No. 94-55597, 85 F.3d 407 (1996).  Defendant General Motors contended that Kareem Abdul-Jabbar abandoned his birth name of Lew Alcindor.  According to The Court, "the abandonment defense has never to our knowledge been applied to a person's name or identity."  The Court found in plaintiff Abdul-Jabbar's favor on his Lanham Act claim:

> "an individual's given name, unlike a trademark, has a life and
> a significance quite apart from the commercial realm.  Use or
> nonuse of the name for commercial purposes does not dispel that
> significance.  An individual's decision to use a name other than
> the birth name –Whether the decision rests on religious, marital,
>  or other personal considerations – does not therefore imply intent
> to set aside the birth name, or the identity associated with that name."
> *Abdul-Jabbar supra* at 412.

The *Abdul-Jabbar* Court explained the connection between the right to publicity to the right to privacy:

> "The so-called right of publicity means in essence that the reaction
> of the public to name and likeness, which may be fortuitous or which
> may be managed and planned, endows the name and likeness of the
> person involved with commercially exploitable opportunities.  The
> protection of name and likeness from unwarranted intrusion or
> exploitation is the heart of the law of privacy."  *Abdul-Jabbar supra* at 413.

## Plaintiff's Right Not to Use the Right of Publicity

Abdul-Jabbar argued that "abandonment cannot be a defense to appropriation because the right of publicity protects not only a celebrity's "sole right to exploit" his identity, White, 971 F.2d at 1399, but also *his decision not to use his name or identity for commercial purposes.*  See, e.g. Waits, 978 F.2d 1093 (applying right of publicity protection to singer with moral and aesthetic objections to advertising).  We agree."  In its Opinion, the *Abdul-Jabbar* Court cited the precedential Federal Court

**EMERGENCY MOTION FOR STAY OF ORDER**

cases of *Price v. Hal Roach Studios, Inc.,* 400 F. Supp.836, 846 (S.D.N.Y. 1975) and *Grant v.*

*Esquire,*367 F.Supp. 876, 880 (S.D.N.Y. 1973) which are discussed below.

The *Price* case dealt with the property rights of the names and likenesses of Laurel and Hardy.

The Federal District Court noted in this precedential decision that:

> "It cannot be possible for Laurel and hardy to lose rights in their own
> names and likenesses through *"non-use." If a person chooses not to*
> *exercise the right or publicity*, there is the attendant statutory right of
> privacy in New York which protects that person from commercial
> exploitation by others. **There cannot, therefore, be any necessity to**
> **exercise the right of publicity during one's life in order to protect**
> **it from use by others or to preserve any potential right of one's heirs."**
> *Price supra* at 846. *(emphasis added).*

The *Price* Court stressed that "plaintiffs' non-use of commercial value of name and likeness does not

preclude against others." *Price quoting Grant v. Esquire, Inc.,* 367 F.Supp. 876, 880 (S.D.N.Y. 1973).

The very issue of the value of a "name or likeness" and whether or not a person has taken

advantage of his commercial value of his name or likeness has been addressed by The Federal Courts

in another precedential decision.  In the *Grant* case, Cary Grant sued Esquire for the unauthorized use

of his photograph.  Plaintiff Grant asserted that he did "not want anyone himself included to profit by

the publicity value of this name and reputation." *Grant supra* at 880.  The *Grant* decision stands "for

the proposition that nonuse of commercial value of name and likeness does not preclude against

violation by others."  The *Grant* Court declared:

> "The question then arises whether the rights of plaintiff Grant because
> of his renunciation of any desire to exploit the commercial value of his
> own name and fame should be any different than those of Twiggy.  We
> think not.  If the owner of Blackacre decides for reasons of his own not
> to use his land but to keep it in reserve he is not precluded from prosecuting
> trespassers." *Grant supra* at 880.

Defendants argue in footnote 3 of their Third Motion to Compel **(Doc. 69):**

> "According to the emails and documents produced in this action, Martello

**EMERGENCY MOTION FOR STAY OF ORDER**

maintains, or at one time maintained, several Nevada entities through which
she conducted business. JYM was one of these entities. ***An entity called
Jackson Hole, LLC was created by Martello "for intellectual property*."** Martello has resisted
all Defendants' efforts to discover the identity of these entities, their relationships, and any
inter-entity ***transactions that would bear on the issues in this action, such as damages."***

This argument does not strengthen their request for Martello's production of tax returns.

Martello has patents on surgical instruments in both the United States and in foreign countries. What

relevance does her other "intellectual property" have to the case at hand? The answer is nothing. If the

information was so important for Defendants to discover, why did they not ask Martello a single

question about the "identity of these entities, their relationships, and any inter-entity transactions"? A

search for the words "entity" or "entities" throughout the three volumes of Martello's deposition taken

on November 26, 2013 reveal that no questions were asked of Martello regarding these "issues".

Martello's deposition was continued on January 31, 2014 (in violation of The Court's order to continue

it). During this continued deposition, Martello was not asked a single question regarding "these

entities, their relationships, and any inter-entity transactions." Martello was not asked a single

question regarding her other "intellectual property" besides the trademarks that she owns. The reason

for this is that these issues are irrelevant to the case and have no bearing on any defense pled by

Defendants in their general denial answer filed with The Honorable Court on October 22, 2012.

Defendants argue that there is a "compelling need" for Martello's tax records because:

> "Dr. Martello also failed to articulate the basis for Plaintiffs' alleged damages (for both her
> federal trademark claim and her state law contract and tort claims) when deposed in this action.
> Thus, Defendants' have not been able to obtain this information though (sic) their other
> discovery efforts."

During her deposition, Martello was questioned several times regarding damages. Each time she was

asked, her attorney objected for a variety of reasons. (**Doc. 53-3** page 304, page 5 of 33, lines 10

**EMERGENCY MOTION FOR STAY OF ORDER**

through 25; **Doc. 53-3**, page 328, page 11 of 33, lines 3 through 9; **Doc. 53-3**, page 329, page 11 of 33, lines 5 to 12).

The *Grant* Court declared that "[U]nder Rule 8, a pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief. It is not necessary to set out the legal theory on which the claim is based." *Grant supra* at 885. This is exactly how Plaintiff pled her Verified Complaint.

It has now become abundantly clear that Plaintiff can't adequately ascertain a damages number for several reasons that were not apparent during Martello's deposition and that are well-documented in her Declaration **(Doc. 107)** and Opposition to Defendants' Motion for Summary Final Judgment **(Doc 113)**.

The questions asked of Martello called for legal conclusions. Furthermore, Martello was at a disadvantage to answer questions regarding damages due to the inadequate financial information that was provided to her by Defendants. Defendants should not be able to argue that a "compelling need" exists for Martello's tax returns when this private financial information is not relevant to their defenses.

Furthermore, Eleventh Circuit precedent dictates that a plaintiff should not be required to produce its income tax returns to prove damages. Litigants should not be required to produce income tax returns "as the price for bringing or defending a lawsuit" where the returns are not relevant. *Camp v. Correctional Medical Services supra* quoting *Ex parte Morris,* 530 So.2d 785, 788 (Ala. 1988). Martello's tax returns are not relevant to the issues in this case and she should not be compelled to produce them.

## CONCLUSION

For the foregoing reasons, the disclosure order should be stayed.

## EMERGENCY MOTION FOR STAY OF ORDER

Respectfully submitted,

Jeannette Martello, Plaintiff, *In Pro Se*

## CERTIFICATE OF SERVICE

### Martello vs. Product Quest et al, Case number 6:12-cv-1304-Orl-22GJK

I hereby certify that the **Emergency Motion for Stay of Order with CD** will be hand delivered to Mr. Robert Norway and Mr. Rick Mitchell of the law firm of Gray Robinson at their offices located at Gray Robinson, 301 E. Pine Street, Suite 1400, Orlando, Florida 32801.

*Jeannette Martello*

Jeannette Martello, Plaintiff, In Pro Se

P.O. Box 914

South Pasadena, CA  91031

drmartello@gmail.com

(626) 993-8501